James **MIZELL**, Petitioner-Appellee,

v.

The **ATTORNEY GENERAL OF the STATE OF NEW YORK and ano., Respondents-Appellants.**

No. 227, Docket 78–2059.

United States Court of Appeals, Second Circuit.

Argued Sept. 27, 1978.

Decided Oct. 30, 1978.

Steven Lloyd Barrett, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City), for petitioner-appellee.

John M. Farrar, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., Robert L. Schonfeld, Asst. Atty. Gen., New York City, of counsel), for respondents-appellants.

Before FRIENDLY and MULLIGAN, Circuit Judges, and WYATT, District Judge.*

MULLIGAN, Circuit Judge:

James Mizell was convicted on September 10, 1971 in New York Supreme Court, Kings County, of robbery, petty larceny, assault and possession of a dangerous weapon. The record in the state court indicated that a jury of twelve plus two alternates was duly impaneled and sworn late in the afternoon of Wednesday, March 24, 1971. The state court judge gave the jury preliminary instructions and adjourned the case to the following morning. Mizell's counsel requested a *Wade* hearing to determine the admissibility of certain identification testimony. A hearing was held and the court found that the testimony was admissible. At this point (2:45 p. m. on Thursday, March 25) the Assistant District Attorney advised the court that two state witnesses who had been subpoenaed had failed to appear. One had gone to North Carolina because of a death in the family and the other had simply failed to make an appearance. The Assistant District Attorney requested a continuance until the following Monday.

* United States District Judge for the Southern District of New York, sitting by designation.

At that point the following colloquy took place:

The Court: What am I going to do with that jury, Mr. Turner?

Mr. Turner [Assistant District Attorney]: Your Honor, since the jurors are serving their first week this week, they would be serving next week as well. I don't think it would be a hardship on those jurors because we wouldn't be holding them past their service. However, if the Court feels that it would be a hardship on the jury, then the people would have to move at this time for a discharge of the jury.

The Court: Are you so moving?

Mr. Turner: Well, I would first ask that the Court rule on my application to keep the jury.

The Court: Denied.

Mr. Turner: Then in that case, your Honor, the people would have to move for a discharge of the jury.

The Court: All right, that motion is granted. The Court is basing its ruling [on] the case of the matter of Roy Bland (phonetic) and also the matter of William Maury [Murray] (phonetic), which is decided in 20 New York 2nd, Page 552 [285 N.Y.S.2d 597, 232 N.E.2d 633]. All right, bring in the jury. Discharge them.

Mr. Albert [Petitioner's Counsel]: If your Honor please, I'd like to note my exception.

The Court: You have an exception.

The case was called for trial again before a new jury on Tuesday, March 30, 1971 but a mistrial was subsequently declared when the jury failed to agree on a verdict. Mizell was eventually found guilty by another jury. At sentencing on September 10, 1971, Mizell's counsel moved to dismiss the indictment on the ground of double jeopardy. The motion was denied. On appeal to the Appellate Division of the Supreme Court, the State of New York, Second Department, the judgment of conviction was affirmed without opinion on February 26, 1973. Leave to appeal to the Court of Appeals was denied on April 6, 1973. The State concedes that Mizell has fully exhausted his state remedies.

On November 29, 1976 Mizell filed a pro se application for a writ of habeas corpus in the United States District Court for the Eastern District of New York raising the issue that jeopardy had attached when the first jury was sworn in on March 24, 1971. The State contended that under the "New York rule" at the time of Mizell's three trials a defendant was not placed in jeopardy until a witness was sworn.[1]

In a memorandum and order filed on December 30, 1977[2] Hon. Eugene H.

---

1. In 1970, this rule was incorporated by the New York State Legislature into N.Y.Crim. Proc.L. §§ 40.20(1), 40.30(1) (McKinney 1971); L.1970, c. 996, § 1, and became effective on September 1, 1971. The statute was subsequently amended in 1974 to provide that in a jury trial jeopardy attaches when a jury has been empaneled and sworn. N.Y.Crim.Proc.L. § 40.30(1) (McKinney Supp.1977).

2. The judgment granting the writ was entered on January 3, 1978 but respondents failed to file timely notice of appeal since despite the terms of the order filed on December 30, 1977 requiring the clerk to make copies of ¬he order and to serve the parties, such service was not made. Under F.R.A.P. 4(a) the State's time to appeal expired on February 2, 1978, thirty days after the judgment was entered. F.R.A.P. 4(a) further provides that the State could have applied for an extension not to exceed thirty days from the expiration of the first thirty day period, to wit, until March 4, 1978. Respondents did not learn of the decision until it appeared in

the advance sheets of the Federal Supplement dated March 6, 1978. A motion was made by the respondents pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure for an order vacating the judgment and directing entry of a new judgment granting the same relief. Judge Nickerson, finding that no service had apparently been made and that the respondents had acted diligently and expeditiously, granted the motion, vacated the prior judgment and directed the entry of a new judgment granting the petition for the writ.

F.R.Civ.P. 77(d) states:

Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure.

The district court's grant of relief under Rule 60(b)(6) in effect extends the time to appeal for more than the sixty days permitted by F.R.A.P. 4(a). Several circuits have established an ex-

Nickerson, United States District Judge, Eastern District of New York, issued a writ of habeas corpus finding that under *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the states were bound to follow the rule of *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963) that jeopardy attaches as soon as a jury is sworn. He further found that the discharge of the jury was not required by "manifest necessity" or the "ends of public justice." *Illinois v. Somerville,* 410 U.S. 458, 468, 93 S.Ct. 1066, 1072, 35 L.Ed. 2d 425 (1973). We agree with the District Judge but, since Mizell has been released from custody, we vacate the judgment appealed from and remand to the District Court for consideration of a new judgment containing an appropriate remedy.

■ In *Downum v. United States, supra,* it became established law that if a defendant were tried in a federal court, jeopardy would attach as soon as the jury was sworn. See *Illinois v. Somerville, supra; United States ex rel. Bland v. Nenna,* 282 F.Supp. 754 (S.D.N.Y.), aff'd, 393 F.2d 416 (2d Cir.), cert. denied, 392 U.S. 941, 88 S.Ct. 2323, 20 L.Ed.2d 1403 (1968). Under *Palko v. Con-*

*necticut,* 302 U.S. 319, 328, 58 S.Ct. 149, 153, 82 L.Ed.2d 288 (1937) it was reasonably clear that federal double jeopardy standards did not apply to the states and that the Fourteenth Amendment did not protect the defendant against a double jeopardy claim unless he was subjected to a "hardship so acute and shocking that our policy [would] not endure it." However, in *Benton v. Maryland, supra, Palko* was overruled and the double jeopardy clause was held to be so fundamental to our scheme of justice that "the same constitutional standards apply against both the State and Federal Governments." 395 U.S. at 795, 89 S.Ct. at 2063. In his opinion below Judge Nickerson rejected the State's contention that the difference between the federal and New York rules concerning when jeopardy attaches was merely technical or mechanical. Rather, Judge Nickerson found that "[t]he composition of a particular jury is crucial" to the defendant's interest, and that the double jeopardy clause protects the defendant's "valued right to have his trial completed by a particular tribunal." *Mizell v. Attorney General of the State of New York,* 442 F.Supp. 868, 871–72 (E.D.N.Y.1977). We

ception under special circumstances to F.R. Civ.P. 77(d) and have upheld the vacating and re-entry of judgment under Rule 60(b)(6) where the sixty days to appeal under F.R.A.P. 4(a) has expired. These cases, however, have required a showing of more than the mere failure to notify the parties that judgment has been entered. Rather, the courts have insisted on a showing that counsel has diligently attempted to discharge the duty implicit in Fed.R.Civ.P. 77(d) by making inquiries to discover the status of the case. *Buckeye Cellulose Corp. v. Braggs Electric Construction Co.,* 569 F.2d 1036 (8th Cir. 1978); *Fidelity and Deposit Co. of Maryland v. Usaform Hail Pool, Inc.,* 523 F.2d 744 (5th Cir. 1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976); *In re Morrow,* 502 F.2d 520, 523 (5th Cir. 1974) ("To permit an appeal where there is failure to notify, without more, would be opposed to the clear wording and intent of Rule 77(d).").

In granting the Rule 60(b)(6) motion in the instant case, the district court relied on *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Inst.,* 163 U.S.App.D.C. 140, 500 F.2d 808 (1974), which held that a trial court may vacate and re-enter a judgment under Rule 60(b) to allow a timely appeal upon a showing that neither party had actual notice of the entry

of judgment, the winning party is not prejudiced by the appeal, and the losing party moves to vacate the judgment within a reasonable time after he learns of its entry. Id. at 810. We do not feel that this view would be accepted here. Although this circuit has not squarely addressed the issue (compare *International Controls Corp. v. Vesco,* 556 F.2d 665 (2d Cir. 1977), cert. denied, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978)), prior decisions indicate that a Rule 60(b)(6) motion may not be granted absent some showing of diligent effort by counsel to ascertain the status of the case. In *Radack v. Norwegian America Line Agency, Inc.,* 318 F.2d 538, 542 (2d Cir. 1963), we stated:

> [L]ack of notice does not *ipso facto* mean that a judgment must, can or should be reopened . . . [Rule 60(b)(6)] cannot be used to circumvent the 1946 amendment to Rule 77(d) dealing with the effect of lack of notice on the running of the time for appeal.

See also *Wagner v. United States,* 316 F.2d 871 (2d Cir. 1963).

If Mizell had appealed the district court's order vacating his earlier judgment, we would be bound to reverse. However, since Mizell did not take such an appeal, we do no more than note the error here.

fully subscribe to the reasoning articulated in the district court and see no reason to repeat it here. In fact, after the filing of the opinion below, the Supreme Court in *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), rejected as unconstitutional the Montana rule which, like the former New York law, provided that jeopardy attaches only after a witness is sworn. The Court stated:

> Although it has thus long been established that jeopardy may attach in a criminal trial that ends inconclusively, the precise point at which jeopardy does attach in a jury trial might have been open to argument before this Court's decision in *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100. There the Court held that the Double Jeopardy Clause prevented a second prosecution of a defendant whose first trial had ended just after the jury had been sworn and before any testimony had been taken. The Court thus necessarily pinpointed the stage in a jury trial that jeopardy attaches, and the *Downum* case has since been understood as explicit authority for the proposition that jeopardy attaches when the jury is empaneled and sworn (citations and footnote omitted). 98 S.Ct. at 2160.

It is evident that the Supreme Court in *Crist* considered that the rule which was formulated by *Downum* in 1963 was made applicable to the states by *Benton* in 1969 and was not simply a mechanical or arbitrary rule of convenience.[3] Even if we were to accept the position of the State, that *Crist* has established new and overrul-

ing principles of law—an argument which we reject—it is our view that *Crist* should be fully applied retroactively.

The State relies on the three-pronged test of *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) as the appropriate test of retroactivity.[4] However, that contention ignores *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973) in which the Court stated:

> The prohibition against being placed in double jeopardy is likewise not readily susceptible of analysis under the *Linkletter* line of cases. . . .

> The guarantee against double jeopardy is significantly different from procedural guarantees held in the *Linkletter* line of cases to have prospective effect only. While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial. A number of the constitutional rules applied prospectively only under the *Linkletter* cases were found not to affect the basic fairness of the earlier trial, but to have been directed instead to collateral purposes such as the deterrence of unlawful police conduct. *Mapp v. Ohio, supra* [367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)]. In *Waller* [*Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970)], however, the Court's ruling was squarely directed to the prevention of the second trial's taking place at all, even though it might have been conducted with a scru-

---

3. *Downum* constitutionalized the rule that jeopardy attaches as soon as the jury is sworn by recognizing its source to be the double jeopardy clause of the Fifth Amendment. See, e. g., *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); id. at 471, 93 S.Ct. 1066 (White, J., dissenting); *United States ex rel. Bland v. Nenna*, 282 F.Supp. 754 (S.D.N.Y.), aff'd, 393 F.2d 416 (2d Cir.), cert. denied, 392 U.S. 941, 88 S.Ct. 2323, 20 L.Ed.2d 1403 (1968).

4. Since *Linkletter*, the Supreme Court has viewed the retroactivity of a new constitutional rule affecting criminal trials as a function of three factors: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Desist v. United States*, 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969); *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

pulous regard for all of the constitutional procedural rights of the defendant.

409 U.S. at 508–09, 93 S.Ct. at 878.

*Crist* makes clear that the rule that jeopardy attaches as soon as the jury is sworn is not simply an arbitrary exercise in line drawing but rather "serves as the lynchpin for all double jeopardy jurisprudence" and is "an integral part of the constitutional guarantee against double jeopardy." 98 S.Ct. at 2162.

In sum, we conclude that Judge Nickerson properly decided that the federal rule set forth in *Downum* had been made applicable to the states by *Benton*. In any event, we believe *Crist* should be applied retroactively.

■ The only question remaining is whether the discharge of the first jury was necessitated by manifest necessity. *Illinois v. Somerville, supra,* 410 U.S., at 467–68, 93 S.Ct. 1066. We again agree with the district court that no such circumstance existed here. The prosecutor asked for a continuance until Monday. There was no indication that either of the two witnesses would be unavailable by Monday. In fact, the request would indicate that the State could reasonably predict their attendance at that time. Moreover, the fact that on Monday the prosecutor moved for trial indicates that the witnesses were not irretrievably lost. The only reason given by the court for the failure to grant a continuance was the convenience of the jury. The jury, however, had not been sequestered and a continuance would not have required them to serve beyond their appointed term. This fact is of special significance since "[t]he discretion to discharge the jury before it has reached a verdict is to be exercised 'only in very extraordinary and striking circumstances' . . . ." *Downum v. United States, supra,* 372 U.S., at 736, 83 S.Ct. at 1034, quoting *United States v. Coolidge,* 25 Fed.Cas.No.14,858, pp. 622, 623 (Cir. Ct., D.Mass.1815). Under these circumstances neither the "ends of public justice" nor "manifest necessity" required a mistrial. A continuance should have been granted. See *Downum v. United States, supra; Cornero v. United States,* 48 F.2d 69, 71 (9th Cir. 1931).

While we are in agreement with the reasoning and the conclusion of the district court, the relief there granted was in the circumstances not appropriate. We are, accordingly, unable to affirm. We must vacate the judgment below and remand for consideration of a new judgment affording appropriate relief.

It developed at oral argument that Mizell had been released from custody at the expiration of his sentence. After argument, we were advised that the date of release was September 19, 1977, well before entry of the judgment below. There is some indication that this was made known to Judge Nickerson, but he was evidently not conscious of the fact when he made his decision. The award of relief was as follows: "The petition for a writ of habeas corpus is granted."

■ The award of relief was somewhat inexact since the writ of habeas corpus, historically and under the statute (28 U.S.C. § 2243), is simply a means of securing the petitioner's body for a hearing. After the hearing, if detention is found to be unlawful, the relief awarded is an order that petitioner be released. If detention is found to be lawful, the decision is to deny the relief requested in the petition. In either case, the writ itself issues (if at all) *before* the hearing; by the time of the decision, the function of the writ has been exhausted. Sokol, Federal Habeas Corpus 36–37 (2d ed. 1969).

■ The granting of the writ by the district court in the case at bar can only be interpreted as an order that Mizell be released. "As a sort of shorthand, lawyers and judges frequently use the expression 'granting the writ' as if it were equivalent to granting the relief requested." Sokol, *supra,* at 37. Mizell in his petition had asked for release from custody, and nothing more.

But at the time of the district court's order, Mizell was no longer in custody and his prayer for the relief of release was

therefore moot. Were *Parker v. Ellis,* 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960), still good law, we would be required to dismiss this appeal as moot. *Parker v. Ellis,* however, is not good law, having been overruled by *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). Since Mizell was in state custody at the time he filed his application in the district court (November 29, 1976), federal jurisdiction "is not defeated by the release of the petitioner prior to completion of proceedings . . . ." *Carafas v. LaVallee,* 391 U.S. at 238, 88 S.Ct. at 1560. The basis for the *Carafas* holding is that:

> the statute does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted. It provides that "[t]he court shall . . . dispose of the matter as law and justice require." 28 U.S.C. § 2243.

391 U.S. at 239, 88 S.Ct. at 1560. The Supreme Court then notes that amendments in 1966 to the habeas corpus statutes (for example, 28 U.S.C. § 2244(b)) "seem specifically to contemplate the possibility of relief other than immediate release from physical custody." 391 U.S. at 239, 88 S.Ct. at 1560.

Mizell may wish to ask for such other relief. The conviction of September 10, 1971, may subject him to "disabilities or burdens" (*Fiswick v. United States,* 329 U.S. 211, 222, 67 S.Ct. 224, 91 L.Ed. 196 (1946)) and to "collateral consequences" (*Ginsberg v. New York,* 390 U.S. 629, 633–34 n. 2, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968)). The judgment below must be vacated so that Mizell may apply for such other relief. We leave it to the district court to determine what relief should be granted. We note the possibility of a declaration that the September 10, 1971 conviction is void and of an order to the respondent Attorney General to apply in the New York courts for a vacatur of the conviction and for an order expunging it and all references to it from the records. There are few precedents. The problem seems to have arisen in the following cases: *North Carolina v. Rice,* 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971), vacating and remanding *Wood v. Ross,* 434 F.2d 297 (4th Cir. 1970); *Pinnell v. Cauthron,* 540 F.2d 938 (8th Cir. 1976); *Grandison v. Warden,* 423 F.Supp. 112 (D.Md. 1976); *Bentley v. Florida,* 285 F.Supp. 494 (S.D.Fla.1968). See also *Sokol, supra,* at 78–80.

Judgment appealed from vacated. The cause is remanded to the district court for consideration of a new judgment affording appropriate relief.

FRIENDLY, Circuit Judge, concurring dubitante:

I concur on the basis that our holding is only that since the indications were that the two prosecution witnesses who were absent on Thursday would be available on Monday, the judge should have granted the continuance which the prosecutor requested and should not have discharged the jury. Even as so limited this seems to me an exceedingly close case. It differs from *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), and *Cornero v. United States,* 48 F.2d 69 (9 Cir. 1931), which was cited with approval in *Downum,* in that in those cases the prosecutor had been negligent (see *Downum,* 372 U.S. at 737, 83 S.Ct. at 1035, and Mr. Justice Clark's discussion of *Cornero,* 372 U.S. at 739 n.*, 83 S.Ct. at 1036 n.*), whereas here he did everything humanly possible to assure the presence of the witnesses short of actually having them in the courthouse before impaneling a jury, often a time consuming process in the New York courts, and holding the witnesses in custody—a course which no one could reasonably advocate. The prosecutor initially sought a continuance; he asked for a discharge of the jury only when the court's refusal of this left him no alternative. Moreover, the court's refusal to grant a continuance was not solely or, as I read the record, even preponderantly for "the convenience of the jury"; after discharging the jurors, the court directed them to report back to the central jury room, where they would be available for other important duties. Furthermore, while in the luminous hindsight of *Crist v. Bretz,* 437 U.S. 28,

98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), and *Robinson v. Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), we now know that the New York rule with respect to the attachment of jeopardy had been displaced by the combined working of *Downum* and *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the busy state trial judge can hardly be faulted for lacking such prescience, especially when defense counsel contributed nothing to enlighten him save for noting an unelaborated exception. If a double jeopardy claim had been clearly articulated, the judge might well have acted otherwise. The same Court that decided the cases cited by my brother Mulligan has warned federal courts against being too quick to interfere with a state trial judge's "rational determination designed to implement a legitimate state policy" when there is "no suggestion that the implementation of that policy" by declaration of a mistrial "could be manipulated so as to prejudice the defendant," *Illinois v. Somerville,* 410 U.S. 458, 469, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425, 434 (1973), and has instructed that the words "manifest necessity" "do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge", *Arizona v. Washington,* 434 U.S. 497, 506, 98 S.Ct. 824, 830, 54 L.Ed.2d 717, 728 (1978), see also *id.* at 516 fn. 35, 98 S.Ct. at 835 n.35. The especially drastic characteristic of a double jeopardy determination in a case like this, namely, that the defendant is entitled not simply to a new trial but to be relieved of any, requires an appellate court to proceed with caution, particularly when, as here, there is no suggestion of prosecutorial or judicial abuse. I suspect my brothers might feel differently about this case if Mizell were serving the first year of a life sentence for murder rather than being at liberty after having completed his sentence; yet in strict theory the test should be the same. In short I believe we have here gone to the very verge and perhaps beyond it.