Rakhil FELSHINA, Appellant,

v.

Richard SCHWEIKER, as Secretary of Health and Human Services, Appellee.

No. 741, Docket 82–6245.

United States Court of Appeals, Second Circuit.

Argued Jan. 27, 1983.

Decided May 13, 1983.

Mark Hus, Community Action for Legal Services, Inc., Brooklyn, N.Y. (Steven M. Bernstein, Brooklyn, N.Y., of counsel), for appellant.

Laura R. Handman, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Miles M. Tepper, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before OAKES, KEARSE and SLOVITER,* Circuit Judges.

PER CURIAM:

Rakhil Felshina applied for Supplemental Security Income (SSI) benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. §§ 1381–83 (1976 & Supp. IV 1980) and was denied. Representing herself, Felshina exhausted her administrative reme-

* Of the United States Court of Appeals for the Third Circuit, sitting by designation.

dies. Represented by the Community Action for Legal Services, she filed a complaint in the United States District Court for the Eastern District of New York seeking review of the Secretary's decision that Felshina was not disabled as defined by the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A), and accompanying regulations. Judge Eugene Nickerson granted the Secretary's motion for judgment on the pleadings in a memorandum decision and order and dismissed the complaint. We reverse for reasons below set forth.

## I. *Jurisdiction*

■ This appeal followed vacation of a judgment entered in February 1982 and reentry on August 12, 1982, pursuant to Fed.R.Civ.P. 60(b)(1), (6). Only if the reentry of judgment were proper was this appeal timely. On appeal, the Secretary argues that reentry was improper since made solely to permit appeal and that this court therefore lacks jurisdiction. We disagree. Although the Federal Rules may not be construed to extend the court's jurisdiction, Fed.R.Civ.P. 82, the use of Rule 60(b) to permit filing of an appeal beyond the time limits set out in Fed.R.App.P. 4(a) does not require examination by this court. There is ample case law allowing a Rule 60(b) motion to remedy an excusable failure to take an appeal. *See* C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2864 at 215 & n. 27, Supp. at 40 n. 27. This court has accepted what it concluded was an *erroneous* Rule 60(b) order where the sixty days to appeal under Fed.R.App.P. 4(a) had expired, indicating that review of the court's action may be sought only by taking an appeal from the order vacating the earlier judgment. *Mizell v. Attorney General,* 586 F.2d 942, 944 n. 2 (2d Cir.1978), *cert. denied,* 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979). *But see Rodgers v. Watt,* 705 F.2d 1176 (9th Cir.1983) (per curiam) (dismissing appeal sua sponte for lack of jurisdiction). The moving party apparently convinced Judge Nickerson that there was "excusable neglect" within the standard adopted by both these cases. Because the Government did not cross appeal on this

issue, we will not examine Judge Nickerson's exercise of discretion.

## II. *Disability*

On review, the issues are (1) whether the Administrative Law Judge employed the correct legal standard, and (2) whether there is substantial evidence on the record to support the Secretary's finding of ineligibility for SSI benefits. 42 U.S.C. §§ 405(g), 1383(c)(3).

A person is "disabled" within the meaning of the Act, and eligible for benefits providing income criteria are met, if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 1382c(a)(3)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The applicable regulation, 20 C.F.R. § 416.920 (1982) describes the steps in evaluating disability. The Secretary reviews current work activity (there was none in this case), the severity of impairment(s), residual functional capacity, and age/education/work experience. "If we can find that you are disabled or not disabled at any point in the review, we do not review further." "Severe impairment" can be proved in two ways: (1) by determining that the impairment "does not significantly limit your physical or mental abilities to do basic work activities" and (2) by comparing the medical facts to a list in the

Appendix. *Id.* (c), (d). The Administrative Law Judge must consider whether impairments in combination are severe. *Id.* (c); *Kolodnay v. Schweiker,* 680 F.2d 878, 880 (2d Cir.1982).

■ The record is insufficient to tell us whether it supports the Administrative Law Judge's conclusory finding that Felshina's conditions, particularly her weight and hypertension, did not meet or equal the requirements that would constitute an automatic conclusion of severe disability. 20 C.F.R. Part 404, App. 1 at § 10.10(b). That table requires a finding of *both* a weight of 242 pounds for a woman of Rakhil Felshina's height of what is said to be in one medical reference 62 inches or 258 pounds if her height is the 64 inches to which she testified *and* hypertension with diastolic blood pressure "persistently" in excess of 100 mm. Hg. Beth Israel hospital reports dated February 21, 1979 and January 9, 1980 noted her obesity and her weight at 250 and 254 pounds and her blood pressure at 150/100 and 150/90 respectively. Dr. Dann who examined her for the SSA found her blood pressure reading to be 170/110 on March 17, 1980. However, his medical report, though referring to her as "extraordinarily obese," stated inexplicably that she weighed 217 pounds, some 37 pounds less than she had only 6–7 weeks earlier. Yet interestingly the claimant herself, after testifying that she weighed 230, when asked by the ALJ, "Is that what you usually weigh?", replied "This has it has been staying now." [*sic*] One may infer that her weight had been remaining the same, but if it were the "same" it would be in the 250 pound area not the 230 to which she testified or the 217 found by Dr. Dann. While the ALJ's report refers to the claimant's obesity in discussing Dr. Dann's report, it does not do so in evaluating the severity of the claimant's impairment. Nor did the ALJ make any attempt to pinpoint her weight or to seek an explanation of the possible discrepancy in Dr. Dann's report. For the taking of further evidence and further findings in this regard we must alone reverse. *Kolodnay, supra.*

■ The record does however contain sufficient medical evidence to support the finding that the other impairments, singly or in combination, were not severe enough significantly to restrict Felshina's capacity to perform basic work-related functions. At the hearing with a Russian language interpreter, Felshina presented complaints of headache, glaucoma, diabetes, gallstones, leg pain, propensity to bruise, noise sensitivity, and impaired functions: lifting (two pounds), walking (one block), standing (ten to fifteen minutes), sitting (thirty minutes), household tasks (none), sleep (impaired). In Felshina's written application for SSI benefits, she presented complaints of diabetes, hypertension, gall stones, glaucoma, and urinary tract infections, which kept her from working because of frequent severe headaches, swollen hands, "a heart condition with frequent attacks," poor vision due to glaucoma, frequent painful kidney infections, and several operations, most recently to remove a neck tumor. She stated: "I feel poorly all of the time and cannot work."

The ALJ did refer to four medical reports that confirmed the existence of (1) severe diabetes, (2) hypertension, (3) recurrent urinary tract infections, (4) glaucoma, and (5) a parotidectomy. These, together with the Social Security physician's report, showed, however, that (1) the diabetes had not affected her lower extremeties, which showed no clubbing or edema, and had not caused any systemic damage; (2) although she was hypertensive, there was no significant underlying cardiac pathology, and the EKG was normal, though with some arrhythmia; (3) although urinary infections recurred, there was no medical evidence of any significant complication; (4) there was no medical evidence of partial or substantial interference with vision due to glaucoma; (5) the post-operative recovery from parotidectomy was normal and complete.

The ALJ did examine the medical records for relevant evidence going to the issues of severe headache and leg, hand, and chest pain. There was no evidence of neurological dysfunction, bone abnormalities, or an-

gina. Finally, the ALJ evaluated evidence of use of medication as submitted by Felshina and as stated in the medical reports. There was not substantial evidence to support the ALJ's finding that Felshina chose not to control her diabetes with medication (indeed, the evidence is that she took daily medication), but that error is harmless when substantial independent evidence showed that the diabetes, controlled or uncontrolled, was not an impairing condition. There was substantial evidence that Felshina did not use medication to control hypertension; she wrote that she had most recently refilled a prescription for medication to be taken five times a day three years ago, although we may note our uncertainty that the Russian-speaking claimant understood the queries on the form that she was filling out. We think this evidence is ambiguous, but not of such centrality as alone to justify a remand to the agency.

In sum, the Secretary considered the claimant's impairments singly and in combination except that he did not treat of her obesity in combination with her hypertension. There is substantial evidence to support findings and conclusions that these other impairments were not disabling within the meaning of the statute. There was therefore no obligation to consider vocational factors unless the combination of obesity and hypertension alone gave her a severe impairment. The order of the district court dismissing the complaint and affirming the Secretary's denial of SSI benefits is hereby reversed and the district court directed to remand for the taking of further evidence and the making of further findings.

Reversed.

KEARSE, Circuit Judge, dissenting:

With all due respect to the majority, I dissent from the decision to remand this case to the Administrative Law Judge ("ALJ"). The only question as to which remand is ordered is whether plaintiff Rakhil Felshina was disabled by reason of her combined weight and blood pressure. It appears to me that the ALJ concluded that she was not so disabled and that there was substantial evidence to support his conclusion.

As the majority recognizes, the standards, promulgated by the Secretary of Health and Human Services, by which a combination of weight and blood pressure are judged to be disabling or not disabling are reflected in a table at 20 C.F.R. § 404, App. 1, at § 10.10(B) (1982). According to the table, a person standing 62 inches tall is not deemed disabled on this ground unless the weight component of her weight-and-blood-pressure combination is 242 pounds or more. At Felshina's August 13, 1980 hearing before the ALJ, at which she was accompanied by her daughter and an interpreter, Felshina testified that she weighed 230 pounds. The ALJ asked, "Is that what you usually weigh?" Felshina replied "This has it has been staying now." [*sic*] The testimony that her weight in August was 230 pounds and that it had been at that level for some time does not seem to me inconsistent with either the recording of her weight as 250–254 pounds at Beth Israel Hospital 6–7 months before, or Dr. Dann's recording of her weight as 217 pounds 5 months before.

Even the presence of evidence that actually conflicted with Felshina's testimony as to her weight, however, would not be a basis on which to set aside a finding of nondisability. The factfinding process in disability benefits proceedings is committed to the Secretary, here acting through the ALJ. He need not resolve factual issues in accordance with the preponderance of the evidence. *See Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir.1982). Rather, his findings must be given conclusive effect by the courts if they are supported by "substantial evidence," 42 U.S.C. § 405(g) (Supp. IV 1980); *Mathews v. Eldridge,* 424 U.S. 319, 339 n. 21, 96 S.Ct. 893, 905 n. 21, 47 L.Ed.2d 18 (1976); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir. 1980), that is, by " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales, supra,* 402 U.S. at 401, 91

S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The ALJ here found "that the claimant's impairments singly, or in combinations are not severe enough to significantly restrict her capacity to perform basis [*sic*] work-related functions." (ALJ decision dated August 21, 1980, at 3.) Felshina had testified that her weight then was, and had been remaining at, 230 pounds. This was below the minimum disabling weight recognized by the regulations. I would regard the claimant's statements as relevant evidence that the ALJ was entitled to accept as adequate to support his finding of nondisability on account of her weight-and-bloodpressure. I would therefore affirm the district court's dismissal of the complaint.