**Dr. H. Allen ORSHAN, Plaintiff,**

**v.**

**Frank J. MACCHIAROLA; Board of Education of the City of New York, Defendants.**

**No. 79 CV 309 (ERN).**

United States District Court, E.D. New York.

April 4, 1985.

Fredric J. Gross, Mount Ephraim, N.J., and R. Alan Aslaksen, Haddonfield, N.J., for plaintiff.

Frederick A.O. Schwarz, Jr., Corp. Counsel, City of New York Law Dept. by Elissa Hutner, Asst. Corp. Counsel, New York City, for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Defendants have moved under Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") for relief from judgment. Plaintiff initially joined but now resists that request. Having reviewed the record, the opposing submissions and the applicable law, the Court denied the motion.

After briefly describing this suit's contentious prejudgment history, the Court will focus in more detail on the post-judgment period, which is germane to the Rule 60(b) motion. With those later circumstances thus highlighted, the Court will present its reasoning for refusing relief.

Following that principal discussion section, the Court will direct the parties toward resolution of an unrelated matter, the prejudgment interest rate.

### Case Background

*Prejudgment*

In 1979, plaintiff Orshan brought suit charging that defendants Board of Education of the City of New York and certain administrators (in the aggregate, "the City") violated specific constitutional and statutory provisions.[1] Simply described, Orshan maintained that the City transgressed his protected rights by not recognizing his tenure as a high school principal.

Despite the multiple constitutional and statutory grounds asserted, Orshan's suit was pared down substantially by two published decisions addressing motions for summary judgment. *See Orshan v. Anker*, 489 F.Supp. 820 (E.D.N.Y.1980); *Orshan v. Anker*, 550 F.Supp. 538 (E.D.N.Y. 1982).

Nevertheless, as the Court held in the second decision, Orshan did establish a legal injury under one theory:

"[P]laintiff acquired tenure as a day high school principal by estoppel, and ... his demotion in 1978 without a hearing as required by N.Y. Educ. Law § 3031 (McKinney 1978) violated the Due Process Clause of the Fourteenth Amendment."

*Id.* at 543.

Liability thereby fixed, damages (if any) remained for ascertainment. For that limited purpose, a trial was held. On March 25, 1983, the jury returned a $68,000 verdict for Orshan but, at the same time, found that he had not been forced to retire, which precluded an award for damages incurred after retirement.

---

1. As the caption indicates, only former Chancellor Frank J. Macchiarola remains as an individual defendant.

Neither side was satisfied with that outcome; consequently, both petitioned for a new trial. So, by yet a third published decision, the Court on September 7, 1983 sustained the jury verdict concluding that:

> "[P]laintiff is entitled to judgment in the amount of $68,000 with interest from the date of retirement and an order directing the Board of Education, within thirty (30) days of the date hereof, to amend plaintiff's personnel records so as to reflect his status at retirement as that of a day high school principal, and to supply the New York City Teachers Retirement System with corrected payment records so that plaintiff's pension is appropriately readjusted.
>
> Forms of proposed final judgment shall be submitted no later than twenty (20) days from the date hereof."

*Orshan v. Macchiarola,* 570 F.Supp. 620, 627 (E.D.N.Y.1983).

### Postjudgment

That brings to the fore the period having particular significance for the instant motion. As instructed, Orshan submitted his proposed judgment on September 27, 1983. The next day, the City tendered its version, which the Court approved. Promptly, the judgment was docketed by the clerk and became final the same day, September 28, 1983. But, contravening Federal Rule of Civil Procedure 77(d) ("Rule 77(d)"), the clerk failed to mail copies of the approved order to the parties. Still, the New York Law Journal ("NYLJ") did contain a notice on September 30, 1983 that the order had been signed. Neither party saw that announcement.

Absent those notifications, the parties were indirectly led (or lulled) into believing by other circumstances that judgment had not been formally rendered. For instance, each side knew that the other desired appellate review but no appeal notices were received. Similarly, the City was aware that Frederic Gross and Alan Aslaksen, plaintiff's counsel, would seek attorneys' fees, but they made no such applications.

In addition, Orshan's pension records that were to be corrected had not been. Finally, discovering that his mail was not being forwarded from a previous office, Mr. Gross had his paralegal contact all courts where he had pending suits regarding their status. After inquiring here, the paralegal informed Mr. Gross that "this Court had taken no action." March 19, 1984 Affidavit of Frederic Gross, at 1.

In early March 1984, each side learned that judgment, indeed, had been entered on September 28, 1983. Time-barred from appealing under Federal Rule of Appellate Prodecure 4(a) ("Rule 4(a)"), the parties filed a joint application under Rule 60(b) to vacate and re-enter the judgment, which (if granted) would start the appellate clock running again. Later, however, feeling that this suit had remained unresolved too long, Orshan withdrew his support and submitted an opposition.

Thus, with those postjudgment circumstances particularly in mind, the Court turns to the legal discussion of the City's Rule 60(b) motion.

### Discussion
### Motion to Vacate and Re-enter Judgment

The City's motion involves the interrelationship among three already mentioned procedural rules:

#### Rule 77(d)

"Immediately upon the entry of ... judgment the clerk shall serve a notice of the entry by mail : .. upon each party....
... Lack of notice of the entry by the clerk does not affect the time to appeal ... or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure."

#### Rule 4(a)

"(1) In a civil case ... the notice of appeal ... shall be filed ... within 30 days after the date of entry of the judgment....

....

(5) The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a).... No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later."

### Rule 60(b)

"On motion ..., the court may relieve a party ... from a final judgment, ... for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; ... or (6) other reason justifying relief from operation of the judgment."

 Relief under Rule 4(a) or Rule 60(b) permits an otherwise time-barred appeal. And, a clerk's failure to give Rule 77(d) notice *coupled with other absolving facts* may constitute grounds for a Rule 4(a) 30 day extension or a Rule 60(b) judgment vacatur and re-entry. *See, e.g., Mennen Co. v. Gillette Co.*, 719 F.2d 568, 570 (2d Cir.1983) (Rule 4(a) relief should have been allowed where, contrary to the district court's own direction, the clerk—evidently without notifying the parties—entered judgment approximately two weeks *before* it was formally rendered.); *Cavalliotis v. Salomon*, 357 F.2d 157, 159 (2d Cir.1966) (A Rule 60(b) motion should have been granted where the clerk misaddressed the judgment notice to plaintiff, who was not otherwise aware that a dismissal had been entered. That unawareness, perhaps, was partially traceable "to the knowing silence of ... defendants....").

Still, while the showings for Rules 4(a) and 60(b) may be similar (*e.g.*, each allows redress on a demonstration of "excusable neglect"), they are not the same, especially when a Rule 77(d) failure to notify is the primary justification. Indeed, as in this suit, where the application is (and can only be) brought via Rule 60(b), the test is "somewhat more stringent" than under Rule 4(a). *Mennen Co. v. Gillette Co.*, 719 F.2d at 570 n. 5.

Hence, a Rule 77(d) clerical mistake alone is probably insufficient to secure a Rule 4(a) extension. *See* 7—Pt. 2 J. Moore, J. Lucas & K. Sinclair, Jr., *Moore's Federal Practice* ¶ 77.05 (2d ed. 1984) ("[E]ven though the party discovers the entry of judgment after 30 days and before 60 days have run, the mere fact that the clerk did not send notice under Rule 77(d) does not establish 'excusable neglect.' ... It has been held, however, that where the clerk mails an erroneous ... notice, an appeal is timely if taken within 30 days of the time stated in the notice or reasonably inferable from its terms.") (footnotes omitted).

At any rate, in line with the "somewhat more stringent" standard, such an error by itself will *not* justify Rule 60(b) vacatur and re-entry. *See Hensley v. Chesapeake & Ohio Railway Co.*, 651 F.2d 226, 229 (4th Cir.1981) ("The courts have uniformly held that Rule 77(d) bars Rule 60(b) relief when the *sole* reason asserted ... is the failure ... to receive notice of the entry of ... judgment.") (emphasis in original).

That nonascription of overriding import to a Rule 77(d) violation, particularly in relation to a Rule 60(b) petition, is both purposeful and necessary. To elaborate, not only Rule 77(d)'s plain language ("[l]ack of notice ... by the clerk does not affect the time to appeal") but its unequivocal legislative history manifest the drafters' intent:

"Notification by the clerk is merely for the convenience of litigants. And lack of such notification in itself has no effect upon the time for appeal.... It would, therefore, be entirely unsafe for a party to rely on absence of notice...."

Rule 77(d), 1946 Advisory Committee Note. *See also Wilson v. Atwood Group*, 725 F.2d 255, 258 (5th Cir.1984) (en banc), *cert. dismissed,* — U.S. —, 105 S.Ct. 17, 82 L.Ed.2d 812 (1984) ("Rule 77(d) evinces a decision by the Advisory Committee and by the Supreme Court, in adopting the Committee's recommendation, to choose a simple inexorable mandate over a flexible rule."); *In re Morrow*, 502 F.2d 520, 523 (5th Cir.1974) ("To permit an appeal where

there is failure to notify, without more, would be opposed to the clear wording and intent of Rule 77(d)."), *quoted in Mizell v. Attorney General of New York*, 586 F.2d 942, 944–45 n. 2 (2d Cir.1978), *cert. denied*, 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979).

Further, the caselaw has perceived Rule 77(d)'s purposeful circumscription as necessary to protect Rule 4(a). *See Hensley v. Chesapeake & Ohio Railway Co.*, 651 F.2d at 227–28 ("[E]xcept upon ... unique circumstances, Fed.R.Civ.P. 60(b) may not be used to avoid the mandate of Fed.R.Civ.P. 77(d) that the lack of notice of entry of judgment does not affect the time to appeal prescribed in Fed.R.Civ.P. 4(a).... .... The time requirements of Rule 4(a) are both mandatory and jurisdictional.... The policy behind this rigorous application of the rules ... is the important one of defining some ascertainable end to litigation so that litigants may order their affairs accordingly.").

More to the point, the caselaw has discerned that, were Rule 77(d) drafted differently, Rule 60(b) could well play havoc on Rule 4(a) (and the finality of judgments) by making its appellate time constraints too easily relaxed. *See Mennen Co. v. Gillette Co.*, 719 F.2d at 570 n. 5 (In a case involving Rule 77(d) clerical mistakes, the Second Circuit—after pointing out that Rule 60(b)'s criteria was stricter than Rule 4(a)'s —added that "were this not so, the binding time constraints imposed by Rule 4(a)(5) would be completely eroded by the open-ended relief offered by Rule 60(b).").

Quite in accord with Rule 77(d)'s purposeful and necessary delimiting, the Second Circuit, as indicated, has taken in dicta a deterring view when a clerk's failure to notify is urged as the primary reason for a Rule 60(b) vacatur and re-entry. Specifically, in *Mizell v. Attorney General of New York*, 586 F.2d at 944–45 n. 2, the Second Circuit observed:

"[P]rior decisions indicate that a Rule 60(b)(6) motion may not be granted absent some showing of *diligent effort* by counsel to ascertain the status of the case. In *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir.1963), we stated:

'[L]ack of notice does not *ipso facto* mean that a judgment must, can or should be reopened ... [Rule 60(b)(6)] cannot be used to circumvent ... Rule 77(d).... '"

(emphasis added). *See Wilson v. Atwood Group*, 725 F.2d at 258 ("[T]he Second Circuit [in *Mizell*] has rejected this effort to circumvent rule 77(d)...."); *Hensley v. Chesapeake & Ohio Railway Co.*, 651 F.2d at 230 ("[T]he Second Circuit has aptly noted that the courts that have found 'unique circumstances' meriting the avoidance of Rule 77(d) ... 'have required more than the mere failure to notify the parties that judgment has been entered.'") (quoting *Mizell v. Attorney General of New York*, 586 F.2d at 944–45 n. 2).

Later, the Second Circuit in *Mennen Co. v. Gillette Co.*, 719 F.2d at 570 n. 5 reaffirmed that earlier observation:

"This Court has suggested in dicta that a 60(b) applicant must go beyond the requirement of excusable neglect and make an additional 'showing of *diligent effort* by counsel to ascertain the status of the case.' ... [citing *Mizell*] ... In sum, a party must show an affirmative if ultimately fruitless effort to track the progress of its litigation, not merely an acceptable excuse for failure to do so."

(emphasis added).

In neither *Mizell* nor *Mennen* was the Second Circuit called upon to delineate the "diligent effort" showing for Rule 60(b) relief when a Rule 77(d) error is the basic ground asserted. Thus, in doing so anyway, the Second Circuit's comments were acknowledged dicta.[2]

---

2. The remarks were dicta because, as in any case, the Second Circuit could only pass bindingly on the issues before it; and neither *Mizell* nor *Mennen* presented the Rule 60(b)-Rule 77(d) test question. To particularize, the district

court in *Mizell* had granted a Rule 60(b) vacatur essentially due to the clerk's failing to send judgment notices. That vacatur's propriety, however, was not appealed. (Had it been, the Second Circuit emphatically stated that, "[W]e

Nonetheless, it is certainly noteworthy that the Second Circuit was constrained to make those remarks. More particularly, by offering those observations, it expressed a decided predisposition and, importantly, extended helpful guidance to lower courts confronted, as here, with Rule 60(b)-Rule 77(d) motions.

■ Accordingly, this Court believes that the Second Circuit if squarely presented with the showing question would—consistent with its *Mizell* and *Mennen* inclination and teaching—charge a Rule 60(b) movant, principally urging a Rule 77(d) error, with an independent demonstration of "diligent effort" in monitoring the suit. *Mizell v. Attorney General of New York*, 586 F.2d at 944–45 n. 2; *Mennen Co. v. Gillette Co.*, 719 F.2d at 570 n. 5. And, absent such affirmative industry, a clerk's failure to notify would not warrant Rule 60(b) relief.

The Court, therefore, requires the movant City to assume the burden of "diligent effort" demonstration. And, measuring the City's postjudgment performance against that probable gauge, the Court finds that the City has not met its burden.

To the contrary, the City *passively* oversaw this case from late September 1983 to early March 1984.

■ Specifically, the City missed the September 30, 1983 NYLJ posting. In the immediately succeeding months, it took no evident *direct* steps to ascertain this suit's posture. Rather, the City (as did plaintiff) relied on *indirect* indicia that judgment was still jointly being awaited, *i.e.*, no notices of appeal had been received, the pension records had not been changed, attorneys' fees applications had not been made, etc.

Significantly, not until January 1984 (well outside the Rule 4(a) time period) was the first overt attempt made to learn this case's status. That action was taken by the (now) nonmovant. Then, Mr. Gross, realizing that his mail was not being forwarded, instructed his paralegal to contact all courts where he had pending matters. Even accepting that misinformation was given, the City was apparently unaware of the incorrect status.[3]

In any event, the City—the sole movant at present—notably does not maintain that

---

would ... reverse." *Mizell v. Attorney General of New York*, 586 F.2d at 944–45 n. 2.).

*Mennen* has already been summarized. *See supra* 536. Suffice it to reiterate that the appeal there was decided under Rule 4(a), not under Rule 60(b)—the avenue attempted here.

**3.** As mentioned, Mr. Gross' affidavit states that his paralegal informed him that "this Court had taken no recent action." March 19, 1984 Affidavit of Frederic Gross, at 1. The reference to "this Court" leaves unclear whether the clerk's office or chambers was consulted. But, alluding to Mr. Gross' affidavit, Ms. Hutner for the City maintains that, "[Mr. Gross'] office made an inquiry to *chambers* and was not told that a final judgment had been entered." July 18, 1984 Affidavit of Elissa Hutner, at 3 (emphasis added).

While certainly crediting Mr. Gross' and Ms. Hutner's representations, the Court has some difficulty accepting that the paralegal received such misinformation—whether from the clerk's office or chambers. To explain, the clerk's September 28, 1983 docket entry, which at the time of the January 1984 inquiry would have been the last recordation, is unambiguous:

"By Neaher, J., Judgment & Order dtd 9/28/83, that the Board of Education amend plaintiff's personnel records so as to reflect

his status as retirement as that of a day high school principal, and supply the New York City Teachers Retirement System with the corrected records, filed."

Presumably, the clerk's office individual taking the paralegal's query would have had to refer to that straightforward entry to respond.

Likewise, if the question was put to chambers, the Court's own case record has an even more explicit September 28, 1983 notation, which also would have then been the final entry:

"Defts' proposed judgment signed & filed, closing case."

Routinely, when fielding such a question, the Court's staff, if uncertain, will check the respective case record.

So, given the clear information conspicuously contained on the clerk's docket card and chambers' case record as well as the need to refer to those sources, the Court suggests that the paralegal may have misunderstood what was conveyed or misconveyed what s/he was told.

This surmise, of course, cannot foreclose the possibility of error by the clerk's office or by chambers. For that reason, the Court simply proffers this alternative explanation for the inaccurate report received by Mr. Gross.

*it* ever inquired.[4] *See Mizell v. Attorney General of New York*, 586 F.2d at 944–45 n. 2 ("[T]he courts have insisted on a showing that counsel has diligently attempted to discharge the duty implicit in Fed.R.Civ.P. 77(d) by making inquiries to discover the status of the case."); *Mennen Co. v. Gillette Co.*, 719 F.2d at 570 ("[I]t is customarily the duty of trial counsel to monitor the docket and to advise himself when the court enters an order against which he wishes to protest.").

This passivity is the more striking by its implicit failure to *expect* a prompt judgment entry. By September 28, 1983, two motions for summary judgment had been decided, a jury trial ended and new trial motions denied. Apart from signing a proposed judgment, nothing substantive remained preventing the rapid—if ministerial—closing of this case, at least as to its merits. The Court, in short, is at a loss to understand why a quick disposition was not anticipated.

Be that as it may, boiled down, all the City can offer towards Rule 60(b) relief is the clerk's omission. But, as seen by Rule 77(d)'s clear language, legislative history and explanatory caselaw, the clerk's breach is not enough. *See Wilson v. Atwood Group*, 725 F.2d at 257 (Despite being handled by three different judges and despite the clerk not informing third party defendants that judgment has been entered, they were not excused from timely filing an appeal. In so finding, the Fifth Circuit remarked, "[Rule 77(d)] is strict, but its meaning and purpose are plain.").

The City's showing, in sum, does not comport with the Second Circuit's perceived "diligent effort" imperative. *Mizell v. Attorney General of New York*, 586 F.2d at 944–45 n. 2; *Mennen Co. v. Gillette Co.*, 719 F.2d at 570 n. 5. *Cf. Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5, 8 (5th Cir.1970) (The district court circulated its opinion without initially entering judgment. After being notified by his office,

one attorney, who was out of the country, had a letter sent requesting that judgment be delayed thirty days allowing his return and opinion review for probable appeal. Opposing counsel had no objection. The district court entered judgment with the attorney still away; and the clerk failed to send notices. The district court's subsequent vacatur was not an abuse of discretion "but in accord with the spirit and import of Rule 60.").

To close this discussion, in deference to the integrity of the soundly based and interrelated federal procedural rules, the Court cannot regard the City's motion to vacate and re-enter judgment as meritorious. It, accordingly, must be denied.

*Prejudgment Interest*

This matter, though affecting the recovery amount, is but a loose end. In the September 28, 1983 order, the Court granted plaintiff interest on damages from his October 1, 1980 retirement date. That award necessarily includes both pre and post judgment interest. The order, however, did not specify the respective rates for those periods.

That omission does not leave the post-judgment award unsettled because 28 U.S.C. § 1961 not only makes such interest mandatory but details the applicable rate:

"(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

(b) Interest shall be computed daily to the date of payment ... and shall be compounded annually."

---

**4.** Even were this still a joint application, the Court would assess the parties' *combined* post-judgment efforts (*i.e.,* factoring in the parale-

gal's general and tardy inquiry) to be short of affirmative vigilance.

That omission, though, does leave the prejudgment award unsettled because § 1961 says nothing about such recovery, viz., whether interest is allowed and, if so, at what standard.

■ Notwithstanding that silence, the caselaw has answered the first question by entrusting the determination to award prejudgment interest to the district court's discretion. *See Waterside Ocean Navigation Co. v. International Navigation Ltd.,* 737 F.2d 150, 153 (2d Cir.1984) ("[W]e have repeatedly recognized the power of district courts to award prejudgment interest."); *Lodges 743 and 1746, International Association of Machinists v. United Aircraft Corp.,* 534 F.2d 422, 446 (2d Cir.1975), *cert. denied,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976) ("Whether to award prejudgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts."). *See also Bricklayers' Pension Trust Fund v. Taiariol,* 671 F.2d 988, 989 (6th Cir.1982) ("Other circuits which have expressly considered this question have found no impediment in section 1961 to the awarding of prejudgment interest.") (citing *Lodges 743 and 1746* and decisions from various jurisdictions).

This Court, as seen, has already exercised its discretion by granting prejudgment interest. To be sure, that allowance is consistent with the Second Circuit's pronouncements. *See, e.g., Waterside Ocean Navigation Co., v. International Navigation Ltd.,* 737 F.2d at 154 ("In these days ... of inflation, ... only if such [prejudgment] interest is awarded will a person wrongfully deprived of his money be made whole for the loss.").

Yet, the rate question lingers. Moreover, its *precise* answer is not as readily gleaned from the caselaw. *See Donovan*

*v. Freeway Construction Co.,* 551 F.Supp. 869, 881 (D.R.I.1982) ("The rate of interest, absent statutory directive, is left to the court's discretion."). *See generally* Note, *Prejudgment Interest as Damages: New Application of an Old Theory,* 15 Stan.L. Rev. 107, 107 (1962) ("The subject of interest as damages has received rather cursory treatment in judicial decisions because of the natural preoccupation of court and counsel with the larger issue of liability.") (footnote omitted) ("Note, *Prejudgment Interest* ").

So, while authorizing prejudgment interest, the Second Circuit has addressed the suitable rate but generally by observing, for instance, in *Lodges 743 and 1746; International Association of Machinists v. United Aircraft Corp.,* 534 F.2d at 446 that:

"[W]hether to award prejudgment interest is governed by federal law, although it may be proper, as a matter of convenience to look to state law in order to determine the appropriate rate."

(footnote omitted). *But see infra* note 6.

Later, in *Rolf v. Blyth, Eastman Dillon & Co.,* 637 F.2d 77, 87 (2d Cir.1980), the Second Circuit stated:

"An award of prejudgment interest is in the first instance, compensatory....

In addition to the compensatory principle, awards of prejudgment interest are governed by fundamental considerations of fairness."

■ Those comments apply to federal question cases such as this suit, Orshan having prevailed under 42 U.S.C. § 1983. But general applicability aside, those broad guidelines do not settle the specific rate.[5]

Conceivably, § 1961 could still be (or at least be presumed) the most suitable refer-

---

5. In contrast to the uncertainty in federal question cases, the forum State's prejudgment interest rate is applied in diversity suits. *See Amoco Transport Co. v. Dietze, Inc.,* 582 F.Supp. 804, 807 n. 1 (S.D.N.Y.1984) ("[F]ederal interpleader actions, premised upon ... diversity ..., are no different than ordinary diversity actions.... In particular, the substantive law of the forum state should be applied to determine whether interest is due..... In this case, it is clear that New York law should apply and that ... the awarding of prejudgment interest is governed by section 5001 of New York's Civil Practice Law.").

542

ent.[6] *See generally* Note, *Prejudgment Interest* 15 Stan.L.Rev. at 112 n. 29 ("A possible compromise between the fixed rate and the flexible determination would be to award interest at the statutory rate [not specifically referring to § 1961] subject to proof that some other rate would be better. The presumption in favor of the statutory rate would reduce the possibility of discriminatory results, and the fact that the burden of proof would be on the party desiring to show a better rate would ensure the introduction of enough evidence to put the determination on a judicially reviewable basis.").

Nevertheless, utilizing the State of New York's prejudgment interest rate (currently 9% under N.Y.Civ.Prac.Law § 5004 (McKinney Supp. 1984–85)) for Orshan's § 1983 claim cannot at this time be precluded. *See Strobl v. New York Mercantile Exchange,* 590 F.Supp. 875, 883 (S.D.N.Y. 1984) (The district court employed § 5004's 9% prejudgment interest rate for a common law fraud claim *and* for a Commodity Exchange Act claim.).[7]

Nor, for that matter, can another fair and compensation oriented rate. *See Rolf v. Blyth, Eastman Dillon & Co.,* 637 F.2d at 87 (In a securities fraud case, the Second Circuit instructed that on remand 7% prejudgment interest should be assigned,

which was the same "rate ... used by the district court in connection with [its previous] award of damages for commissions....").

At this point, though, the Court will not designate the standard because, while mentioned in conference, the parties have not formally dealt with the question. Accordingly, they are to submit within fourteen days simultaneous briefs with supporting legal authority treating the issue of the proper prejudgment interest rate. Optional responses will be due within seven days thereafter.

Alternatively, the parties could expedite the resolution of this dangling matter by agreeing on the appropriate standard. If able to do so, they are to tender within fourteen days (in lieu of briefs) a stipulation specifying the rate(s) covering the prejudgment period(s).[8]

In either instance, whether proceeding by briefs or stipulation, the parties are to be guided by the foregoing exposition as supplemented by their research.

Conclusion

To recapitulate the preceding discussion, defendants' Rule 60(b) motion is denied and the parties are directed to submit briefs or a stipulation concerning the prejudgment

---

**6.** The Second Circuit's remark in *Lodges 743 and 1746, International Association of Machinists v. United Aircraft Corp.,* 534 F.2d at 446 (quoted *infra* at p. 541) that "as a matter of convenience" State law may be properly looked to for the rate was made before the 1982 amendment to § 1961. The earlier version also dealt only with postjudgment interest but, unlike the current statute, designated *State* law as the governing rate. Thus, the comment presumably meant that, already controlling postjudgment interest under § 1961, State law would likely be the easiest source for prejudgment interest on a federal claim as well.

Assuming that conjecture's correctness, the Second Circuit today (*i.e.,* after the 1982 amendment) might correspondingly deem § 1961's *federal* postjudgment interest rate the most convenient referent, inasmuch as that statute no longer designates State law *and* does provide a federal standard.

**7.** Should § 5004 be applied, however, the standard would be 6% from October 1, 1980 (the retirement date) until June 25, 1981 and 9%

from then until September 27, 1983 (the day before judgment). The prejudgment period is separated because, effective June 25, 1981, § 5004 was amended from 6% to 9%.

Those differing rates during their respective intervals must be reflected in awards prior to the change. *See* N.Y.Civ.Prac.Law § 5004, "1981 Supplementary Practice Commentaries" (McKinney Supp. 1984–85) ("The 9% rate took effect June 25, 1981. The application provision in § 2 of L.1981, c. 258 ... provides that if interest is to be computed 'from a date prior' to June 25, 1981, it shall be computed at 6% until the effective date but at the 9% for the period following it."). *See also Strobl v. New York Mercantile Exchange,* 509 F.Supp. at 881–82 (The district court applied the 6% and 9% rates to the State claim and seemingly to one federal claim, too.).

**8.** *See supra* note 7.

interest rate on or before the date schedule specified.

SO ORDERED.