702 F.2d 77
 Mrs. Charlotte WILSON, Plaintiff,
v.
The ATWOOD GROUP and Occidental Petroleum Corporation,
Defendants-Appellees, Cross-Appellants,
v.
Kirby L. STARK, Worldwide Drilling Consultants, Inc. and
Hartford Accident and Indemnity Company, Third
Party Defendants-Appellants, Cross-Appellees.
 No. 82-3688
 United States Court of Appeals,
Fifth Circuit.
 April 4, 1983.
 
 Hebert & Abbott, Lawrence E. Abbott, New Orleans, La., for Stark, et al.
 Camp, Carmouche, Palmer, Barsh & Hunter, Donald Ensenat, New Orleans, La., for Atwood.
 Hailey, McNamara, McNamara & Hall, Antonio E. Papale, Jr., Metairie, La., for Occidental Petroleum.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before REAVLEY, GARWOOD and JOLLY, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 This case involves the proper application of Fed.R.Civ.P. 77(d) [F.R.C.P.] and F.R.C.P. 60(b). We hold that there was no timely notice of appeal and dismiss the appeal.
 
 
 2
 On May 7 and 8, 1981 the case was tried without a jury to Judge Gordon. Judge Gordon took the case under advisement. Because of Judge Gordon's untimely death, the case was reassigned to Judge Carr. On April 7, 1982, the case was submitted to Judge Carr, on the transcript of the first trial. Judge Carr rendered judgment which was entered June 1, 1982. Appellant made a timely motion for new trial. A hearing was scheduled, but in the interim, Judge Gordon's position was filled by Judge Mentz. Judge Mentz heard the motion on August 11, 1982, and overruled it the next day.
 
 
 3
 It is undisputed that appellee received notice of this order, although appellant did not. Counsel made no inquiries with the court clerk regarding the status of his motion. It was not until receipt of a demand letter on October 19, 1982, over two months after the entry of judgment that appellants received notice that its motion for new trial had been overruled. Appellant moved for an enlargement of time in which to file a notice of appeal. A hearing was held on November 3, 1982. At the hearing it became apparent that sometime in June, due to a clerical error, the word "out" had been placed by appellant's name on the docket sheet. This notation indicated that appellant was no longer in the case and would not receive any mailings from the clerk's office. The error was not corrected when appellant appeared at the August 11 hearing. Judge Mentz then granted appellant's motion under Rule 60(b), vacating and then reentering his denial of the motion for new trial. He stated:
 
 
 4
 Because the case had been handled by three different judges, and presumably three different deputy clerks in the Clerk's office, this evidently caused some confusion with respect to what parties were "in" or "out" on the docket sheet. While the affidavits may indicate what the nature of the error and omission was, they also indicate the problems inherent when a case is heard by three different judges.
 
 
 5
 Further, the Court does not find any fault on the part of counsel for third party defendants. In light of the eleven-month delay in the rendering of a decision in this case, it was not unreasonable for counsel to anticipate further delays with respect to a decision on the post-trial motions.
 
 
 6
 By its terms, Rule 77(d) seems to preclude this appeal. It states that
 
 
 7
 Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed ...
 
 
 8
 The Advisory Committee notes expressly disapprove and overrule a procedure similar to the one employed here. In Hill v. Hawes, 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944) the Supreme Court held that where the district court clerk did not notify the parties of judgment and the prior rule required such notification, the district court could vacate and reenter its judgment. The notes expressly rejected Hill, stating:
 
 
 9
 Because of Rule 6(c), which abolished the old rule that the expiration of the term ends a court's power over its judgment, the effect of the decision in Hill v. Hawes is to give the district court power, in its discretion and without time limit, and long after the term may have expired, to vacate a judgment and reenter it for the purpose of reviving the right of appeal. This seriously affects the finality of judgments....
 
 
 10
 Rule 77(d) as amended makes it clear that notification by the clerk of the entry of a judgment has nothing to do with the starting of the time for appeal; that time starts to run from the date of entry of judgment and not from the date of notice of the entry. Notification by the clerk is merely for the convenience of litigants.
 
 
 11
 Despite the rather plain meaning of this language, courts have at times been reluctant to apply the rule because of the draconian effect it may have on the litigants. They have relied instead on Rule 60(b), which states:On motion ... the court may relieve a party or his legal representative from a final judgment order or proceeding for ... (6) any other reason justifying relief from the operation of the judgment.
 
 
 12
 Three related rationales have been advanced to support this use of Rule 60(b). The first rationale draws squarely from Rule 77 itself and the litigant's duty to diligently ascertain the status of his case without notification from the clerk. Two cases decided by this circuit exemplify this rationale. The first is Smith v. Jackson Tool & Die, Inc., 426 F.2d 5 (5th Cir.1970). There, the district court sent copies of its adverse judgment to the plaintiff. The attorney promptly notified the court that he would be out of the country and asked that the court delay entry of the judgment. Opposing counsel acceded to this request, although he submitted a proposed judgment. The court, despite the agreement, entered judgment and in subsequent correspondence failed to notify the parties that judgment had been entered. As we read this case, the attorney involved satisfied his duty of diligence by his prompt response to the proposed judgment, and that duty was then interrupted by the agreement that the judgment would not be entered while the attorney was out of the country.
 
 
 13
 A second case illustrating this "duty of diligence" rationale is Fidelity and Deposit Co. of Maryland v. USAForm Hail Pool, Inc., 523 F.2d 744 (5th Cir.1975), cert. denied, 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976). There, counsel repeatedly inquired whether judgment had been entered. The district court assured counsel that these inquiries were unnecessary and that he would be informed of the judgment. We stated:
 
 
 14
 counsel diligently sought to discharge the duty implicit in F.R.Civ.P. 77(d) to make suitable inquiries to discover for itself the status of the case.
 
 
 15
 Id. at 751. This rationale is in harmony with the purposes of Rule 77 while allowing counsel to rely on assurances by the court that notice will be sent, and without forcing counsel to continue to make repeated inquiries of overworked court staff.
 
 
 16
 A second test for affording relief under Rule 60(b) was formulated in Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institute, 500 F.2d 808 (D.C.Cir.1974). The court wrote:
 
 
 17
 We believe that a trial court may vacate and re-enter a judgment under Rule 60(b) to allow a timely appeal when neither party had actual notice of the entry of judgment, when the winning party is not prejudiced by the appeal, and when the losing party moves to vacate the judgment within a reasonable time after he learns of its entry.
 
 
 18
 Id. at 810. We think this test does not comport sufficiently with the purpose of Rule 77, and therefore join the Second Circuit in rejecting it.[1] In Mizell v. Attorney General of the State of New York, 586 F.2d 942 (2d Cir.1978), cert. denied, 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979), the court, after discussing the Expeditions Unlimited test, stated:
 
 
 19
 We do not feel this view would be accepted here. Although this circuit has not squarely addressed the issue ... prior decisions indicate that a Rule 60(b)(6) motion may not be granted absent some showing of diligent effort by counsel to ascertain the status of the case.
 
 
 20
 Id. at 945 n. 2.
 
 
 21
 Besides ignoring the diligence requirement, this test has other flaws. First, the lack of prejudice to the winning party requirement is, as a practical matter, illusory. The winning party is never prejudiced by an appeal, if the comparison be to what he thought he had: a case as yet undecided. The only requirements of this test are that both parties not receive notice and that once notified, the loser take prompt action. Thus, this test is essentially the same as in Hill, which Rule 77 was intended to overrule.
 
 
 22
 We think this test fails to recognize the interests in finality stressed in Rule 77. The Expeditions Unlimited court stated:
 
 
 23
 This rule is intended to preserve the finality of judgments. If the parties do not know of the entry of judgment, the winning party cannot rely on the judgment and the losing party cannot make a "free, calculated, deliberate" choice not to appeal. Ackermann v. United States, 340 U.S. 193, 198, 71 S.Ct. 209 , 95 L.Ed. 207 (1950). In these circumstances the purposes behind Rule 77(d) would not be served by denying the losing party the privilege of appealing and, in our view, justice demands that the losing party be given that opportunity.
 
 
 24
 500 F.2d at 809. These are potent arguments, but they stress too heavily the parties' interests. Concerns of judicial efficiency and the need to remove cases from the court's docket by simple rules without endless review mandate that judgments be final. We think the decision was made by the 1946 amendment of Rule 77(d) to choose finality against the arguments advanced in Expeditions Unlimited.
 
 
 25
 A third test is contained in Hensley v. Chesapeake & Ohio Railway Co., 651 F.2d 226 (4th Cir.1981). The court held that Rule 60(b) could supersede Rule 77(d) only in what it termed "unique circumstances," id. at 229, citing Jackson Tool & Die and USAForm. While the court did not define what it meant by this term, it stressed that the litigant must satisfy his duty of diligence. We think there is no functional difference between the "unique circumstances" test and the "duty to inquire" approach. Where counsel has complied with his duty to inquire, it is impossible to perceive how he would fail to receive notice of the entry of judgment without some unique circumstances. Conversely, where counsel has not complied with his duty to inquire, any inquiry into "unique circumstances" would be cut off.
 
 
 26
 We now turn to the case at hand. Appellant argues that unique circumstances exist since three different district judges handled the case. Our threshold inquiry however, should be whether appellant complied with his duty to inquire. The fact that the docket sheet inadvertently indicated that counsel was out of the case does not bear on this question. This case should be treated no differently from cases in which notice was not sent to either party, or in which notice was sent but lost in the mail. The ultimate fact is that the clerk did not send notice to appellant. But it is clear that appellant did not comply with his duty to inquire. Over two months passed from the hearing on his motion for new trial, yet appellant had not made one inquiry as to the status of his case.
 
 
 27
 Appellant argues that his delay in inquiring was reasonable since the case had been handled by three district judges and Judge Mentz was unfamiliar with the case. The court in Hensley was confronted with a similar argument. Hensley argued that he was entitled to assume that it would take the court a long time to rule on his lengthy motion. The court rejected this argument, asserting:
 
 
 28
 While Hensley's counsel might reasonably have anticipated some delay in the decision on Hensley's motion, Rule 77(d) puts the onus on counsel to inquire about the status of his or her case an counsel should in no event be permitted to wait, as Hensley's counsel did, over six months before inquiring about a decision on a motion.
 
 
 29
 Since appellant has not satisfied his duty of inquiry under Rule 77(d), it follows that the district court's vacating of judgment under Rule 60(b) was improper.
 
 
 30
 APPEAL DISMISSED.
 
 
 31
 E. GRADY JOLLY, Circuit Judge, specially concurring:
 
 
 32
 I specially concur to underscore what I perceive to be the unjustified harshness of the rigid application of a generally unknown and outmoded rule. The rigid application of this rule is not necessary to serve its intended purpose. If this rule were well known and followed by attorneys, a more than slight administrative burden would be imposed upon the courts.
 
 
 33
 I concur only because I believe that the majority is correct in its conclusion that the cases of this circuit require the result reached here. I urge en banc consideration.
 
 
 34
 The facts are well stated in the majority opinion. It is my opinion that the attorneys here were not, in the practical sense, guilty of a lack of diligence, certainly when judged by work-day standards of lawyers practicing in the real world. A busy attorney does not daily inquire about a case that he only recently argued to a busy court, and here it was not a lack of diligence not to inquire about the status of this case within two months of the motion for new trial when the case had been held under advisement for a year and a half.
 
 
 35
 Fed.R.Civ.P. 77(d) was apparently adopted for the purpose of assuring that finality of judgments would not be threatened by indiscriminate judges. The rule need not be applied rigidly to accomplish that result at the expense of fairness and justice. A fair application of the rule can serve its intended end just as well.
 
 
 36
 And finally, the truth is, in my opinion, that most attorneys are not consciously aware of Rule 77(d) and its application under our cases. If they were, the clerks' offices would have a deluge of calls on a daily basis inquiring about every motion argued or case tried which was thirty days old and older. Indeed, every attorney best maintain daily contact with the clerks' offices with respect to all matters that he has pending in the district court if he is to be held fully accountable, as here, for the clerks' errors.
 
 
 37
 I concur because our cases, in my opinion, seem to require this result. I write this concurrence to call attention, I hope, to the need for en banc review.
 
 
 
 [1]
 We recognize that in USAForm we quoted this test with seeming approval. Yet a careful reading of the opinion convinces us that it was bottomed on the fact that counsel complied with his duty of diligence. Indeed, when the court applied the principles of law to the facts in USAForm, it relied exclusively on Jackson Tool & Die
 We also recognize that Expeditions Unlimited cited Jackson Tool & Die as authority for its test. In Jackson Tool & Die the court pointed to the lack of prejudice involved as an additional factor in the balance of equities inherent in a Rule 60(b) determination. Yet this factor was looked to only after the court determined that counsel had satisfied his duty of diligence.