**Dale HALL, Appellant,**

v.

**COMMUNITY MENTAL HEALTH CENTER OF BEAVER COUNTY, Appellee.**

No. 84–3778.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 16, 1985.

Decided Sept. 6, 1985.

A. Leon Higginbotham, Jr., Circuit Judge, filed concurring opinion.

Howard R. Lehman, Robert H. Lang, Louis R. Salamon, Salamon & Lang, Pittsburgh, Pa., for appellant.

Edward N. Stoner, II, Robert F. Prorok, Reed, Smith, Shaw and McClay, Pittsburgh, Pa., for appellee.

Before SEITZ, HIGGINBOTHAM and SLOVITER, Circuit Judges.

**OPINION OF THE COURT**

SEITZ, Circuit Judge.

The plaintiff, Dale Hall, appeals from the denial of his motion to vacate and reenter a final order dismissing his lawsuit in order to permit a timely appeal on the merits. This court has jurisdiction under 28 U.S.C. § 1291 (1982).

### I.

On July 3, 1984, the district court entered an order dismissing Hall's sex discrimination suit against his employer, Community Mental Health Center of Beaver County. Although the docket entries show otherwise, neither party was actually notified of the order. On August 29, 1984, counsel for the Mental Health Center sent a letter to the district court judge supplementing his motion to dismiss, apparently unaware that the motion had already been decided in his favor. On September 13, 1984, Hall requested by letter to the judge twenty days to respond to the issues raised by the Mental Health Center, and on October 1, Hall submitted a supplemental brief on those

issues, apparently directly to the judge. There was no acknowledgement or other response to any of those communications.

Eventually, on November 21, Hall's attorney discovered, while attempting to ascertain the status of the motion to dismiss, that the case had been resolved, and the motion to dismiss granted, on July 3. On November 23, Hall filed a motion in the district court for leave to appeal the final order. This motion was denied on November 26, on the grounds that under Federal Rule of Civil Procedure 77(d) and Federal Rule of Appellate Procedure 4(a)(5), the court had no authority to grant such a motion.

On December 3, Hall filed a motion to vacate and reenter the final order of July 3, citing Federal Rule of Civil Procedure 60, and *Braden v. University of Pittsburgh,* 552 F.2d 948 (3d Cir.1977) (in banc), which held that the district court may vacate and reenter an order for the purpose of rendering an interlocutory appeal timely by virtue of its "broad power over its interlocutory orders before a final judgment is entered." *Id.* at 954. The district court denied this motion as well, holding that *Braden* applies *only* to the court's power to modify interlocutory orders where the district court retains control of the course of further proceedings, and not to final orders where the case has passed completely out of the power of the district court. It is from this ruling that Hall appeals.

## II.

We agree with the district court's interpretation of *Braden.* As we stated in *Braden,* "Rule 77(d) should not be read woodenly so as to preclude such relief in the interlocutory situation, particularly given its [Rule 77(d)'s] limited purpose—to protect the *finality* of judgments." 552 F.2d at 954 (emphasis in original). While there is in *Braden* some relatively sympathetic discussion of cases allowing use of Rule 60(b) where there has been a failure to receive actual notice of a final judgment, the court there was using those cases to point out that the exception being allowed

in *Braden* was less extreme. In any case, *Braden* expressly found Rule 60(b) inapplicable to its facts and found authority for the district court's actions under the broad power that a district court has over a case *before* final judgment is entered, citing *Hill v. Hawes,* 320 U.S. 520, 524, 64 S.Ct. 334, 336, 88 L.Ed. 283 (1944).

## III.

Hall argues that Federal Rule of Civil Procedure 60(b) empowers the district court to vacate and reenter the July 3 dismissal, allowing him to file his appeal timely despite the lapse of five months between the date of the order and the date of his attempted appeal, and despite the strict wording of Federal Rule of Civil Procedure 77(d) and Federal Rule of Appellate Procedure 4(a). Federal Rule of Civil Procedure 77(d) provides in part that:

> [i]mmediately upon the entry of an order or judgment the clerk shall serve a notice ... upon each party.... Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure.

Federal Rule of Appellate Procedure 4(a)(1) requires that appeals be filed "within 30 days after the date of entry of the judgment or order appealed from" and Federal Rule of Appellate Procedure 4(a)(5) allows the district court "upon a showing of excusable neglect or good cause [to] extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)." Federal Rule of Civil Procedure 60(b) allows "the court [to] relieve a party ... from a final judgment, order, or proceeding for ... (1) mistake, inadvertance, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment."

The rule in this circuit with respect to the use of Rule 60(b) to vacate and reenter *final* judgments is stated in *West v. Keve,* 721 F.2d 91 (3d Cir.1983), which at the

outset would seem to preclude the manuever requested by Hall. In that case, the appellant had "moved the district court under Rule 60(b) to reinstate the earlier judgment and essentially revive his time for appeal," *id.* at 96, which had lapsed according to the limitations of Rule 4(a). We held that Rule 4(a), being more specific to the appellate process than Rule 60(b), should control the timing of the filing of appeals, especially in view of the fact that allowing the use of Rule 60(b) to circumvent the constraints of Rule 4(a) could have the effect of nullifying Rule 4(a)(5) altogether. In addition, we noted that the Supreme Court, in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982), had stated that "the requirement of timely notice of appeal is 'mandatory and jurisdictional.'" 459 U.S. at 61, 103 S.Ct. at 403 (quoting *Browder v. Director, Illinois Dep't of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978)). We held, finally, "that because the avowed purpose of the Rule 60(b) motion in this case was to extend the time for appeal, it had to meet the time limitations of Rule 4(a)." 721 F.2d at 97.

Although counsel for Hall failed to discuss *West* in his brief, he cited several cases from other circuits allowing a limited use of Rule 60(b) in cases where the failure to file timely under Rule 4(a) arose from a breakdown of the process of notification of the issuance of final judgments. There is some language in *West* which might be construed as limiting it to the facts of that case, *see West v. Keve*, 721 F.2d at 97 ("We expressly do not decide whether a Rule 60(b) motion must meet the time constraints of Rule 4(a) under other circumstances not present here."), and, indeed, two subsequent cases have sidestepped *West's* result because their facts did not bring them directly into conflict with its holding, *see McGarr v. United States*, 736 F.2d 912, 918 (3d Cir.1984) (Rule 60(b) order treated as a 4(a)(5) extension order since filed *within* appropriate period for a 4(a)(5) motion); *Sames v. Gable*, 732 F.2d 49, 51 n. 2 (3d Cir.1984) (circuit panel's suggestion of 60(b) motion predated *West*, "[m]ore-

over, this case presents an additional 'special circumstance' not present in *West*.") *West* does not involve a failure of notice. However, even assuming *arguendo* that the language in *West* limiting its holding "only to the circumstances presented here," 721 F.2d at 96, means that such cases may be applicable (a questionable assumption, given the next clause: *"viz,* where the sole stated purpose of the Rule 60(b) motion is to extend the time for appeal." *Id.*), the facts of this case do not bring it under the exceptions that Hall would have us adopt.

## IV.

Several courts have noted that the time limits set forth by these rules sometimes lead to inequitable results. *See West v. Keve*, 721 F.2d at 96 ("the seemingly inequitable results that may flow from a strict application of the harsh time constraints in Rule 4(a)"). In particular, the procedural bar to an appeal caused by a late filing when the tardiness is due to the failure of the clerk to send the required notice of entry of judgment has been labeled a "draconian effect" of Rule 77(d). *Wilson v. Atwood Group*, 702 F.2d 77, 78 (5th Cir. 1983), *aff'd on rehearing*, 725 F.2d 255 (5th Cir.) (en banc) *cert. denied*, —— U.S. ——, 105 S.Ct. 17, 82 L.Ed.2d 912 (1984) (*Wilson* I).

Those courts which have allowed the use of 60(b) motions in such circumstances, however, have usually held that "the simple failure of the clerk to mail notice of the entry of judgment, without more, does not permit relief to a party who has failed to appeal within the prescribed time." *Wilson v. Atwood Group*, 725 F.2d 255, 257 (5th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 17, 82 L.Ed.2d 912 (1984) (*Wilson* II) (citations omitted). Some courts have required a showing of "unique," *Hensley v. Chesapeake & Ohio Ry. Co.*, 651 F.2d 226, 229 (4th Cir.1981), or "extraordinary," *Scola v. Boat Frances, R., Inc.*, 618 F.2d 147, 155 (1st Cir.1980), circumstances. The Second, Fifth, and Eighth Circuits require a showing of diligent effort by counsel seeking 60(b) relief

either to ascertain the status of the case, *see Wilson I; Mizell v. Attorney General of the State of New York*, 586 F.2d 942 (2d Cir.1978), *cert. denied*, 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979); *Buckeye Cellulose Corp. v. Braggs Electric Co.*, 569 F.2d 1036 (8th Cir.1978) (per curiam); or to attempt to delay the entry of judgment, *see Wilson II, citing Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5 (5th Cir.1970).

The rules in the other circuits cited all require some affirmative behavior on the part of counsel which would likely have allowed timely filing but for some error on the part of the court or clerk. Thus, in *Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5 (5th Cir.1970), counsel for the plaintiff notified the court that he would be out of the country and asked the court, with agreement of opposing counsel, to delay the entry of judgment. The court, however, entered judgment and the clerk failed to notify the parties. In that circumstance, the United States Court of Appeals for the Fifth Circuit held that the attorney had "satisfied his duty of diligence by his prompt response to the proposed judgment, and that duty was then interrupted by the agreement that the judgment would not be entered while the attorney was out of the country." *Wilson I*, 702 F.2d at 79 (discussing *Smith v. Jackson Tool & Die, Inc.*). Similarly, in *Fidelity & Deposit Co. v. USAForm Hail Pool, Inc.*, 523 F.2d 744 (5th Cir.1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976), counsel had repeatedly inquired whether judgment had been entered and was assured by the district court that his inquiries were unnecessary because he would be notified of the judgment. In these and other cases, the 60(b) motions were allowed because counsel's duty of diligence was suspended in reliance on some affirmative action of the district court.

## V.

Plaintiff's counsel does not argue that he exercised such diligence and that he relied on affirmative behavior by the court in suspending his inquiries. Instead, he admits in his brief that he made no inquiries but argues that it was "reasonable to as-

sume that no final order would be forthcoming so soon after the last briefs were submitted," thus suspending any duty of inquiry for the months of July and August. He argues further that the letters and supplemental briefs *should* have resulted in some affirmative response from the court to the effect that judgment had been entered and further activities were moot. Since there was no response from the court, the plaintiff believes he was entitled to assume that the judgment was still pending.

The behavior of Hall's counsel, however, is indistinguishable from what would be expected had there been no supplemental material filed: but for the fortuitous letter by counsel for the appellee in support of his motion, sent fifty seven days after the entry of judgment, or three days before the expiration of the Rule 4(a)(5) period for applying for an extension of the time for appeal, the sixty day period would have passed totally unnoticed with no more and no less indication from the court that judgment had been entered, and no more and no less activity to monitor the progress of the case by Hall's counsel. The "unique circumstances" of this case do not rise to the level required by other circuits to permit the use of Rule 60(b) in such a situation. As the United States Court of Appeals for the Fifth Circuit recently stated, "[C]ounsel made no effort to determine whether the decision was likely to be or was being delayed and did not forego action because of his belief that decision was likely to be delayed. He simply relied on the clerk to give notice. Apparently, this was no departure from his usual practice: the record gives no reason to believe he would have acted otherwise under normal circumstances.... [U]nique circumstances do not excuse untimeliness when they are unrelated to counsel's failure to file the appeal." *Wilson II*, 725 F.2d at 258.

Thus, even if there were room in the language of *West v. Keve* for an exception when delay in filing an appeal is based on reliance on some affirmative behavior of the district court, which we do not decide here, the circumstances of this case would not come within such an exception. In

essence, Hall's request implies that the district court has an affirmative duty to monitor the clerk's office in its compliance with Rule 77(d), at least where there is arguably the slightest indication that the parties may be unaware of the judgment. Such a duty would be entirely in opposition to the purpose of the final sentence in Rule 77(d), which places the burden of monitoring the process of the case on the parties, as the Advisory Committee Notes make clear: "Rule 77(d) as amended makes it clear that notification by the clerk of the entry of judgment has nothing to do with the starting of the time for appeal.... Notification by the clerk is merely for the convenience of the litigants." Notes of the Advisory Committee on Rules, *reprinted at* Federal Civil Judicial Procedure and Rules 170 (1985).

Hall argues that we should apply the standard established by the United States Circuit Court of Appeals for the District of Columbia, which allows a district court to vacate and reenter a judgment under Rule 60(b) "when neither party had actual notice of the entry of judgment, when the winning party is not prejudiced by the appeal, and when the losing party moves to vacate the judgment within a reasonable time after he learns of its entry." *Expeditions Unlimited Aquatic Enters., Inc., v. Smithsonian Inst.,* 500 F.2d 808, 810 (D.C.Cir. 1974). That rule has been expressly rejected in the Fifth, Ninth, and Second Circuits, *see Wilson I,* 702 F.2d at 79; *Rogers v. Watt,* 722 F.2d 456 (9th Cir.1983); *Mizell v. Attorney General of the State of New York,* 586 F.2d at 945 n. 2. While the *Expeditions Unlimited* rule might afford appellant relief, it essentially liquidates Rule 77(d)'s provision that the lack of notice by the clerk does not affect the time to appeal because it is so easily satisfied that it would enable litigants to invoke Rule 60(b) in virtually every situation where there was failure of notice. *See Wilson I,* 702 F.2d at 79–80. That provision was adopted expressly for the purpose of overturning *Hill v. Hawes,* 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944), the case which first opened the door for motions to vacate and reenter final judgment. "In

view of the amendment to the Rules addressing the *Hill* decision, something additional [beyond the *Expeditions Unlimited* elements] is required." *Rodgers v. Watt,* 722 F.2d at 460.

## VI.

It is unfortunate when the operation of procedural rules prevents an attempt to gain relief on the merits, but important considerations of judicial economy and fairness to both parties are served by rules preserving the finality of judgments. "Rule 60(b) 'is a grand reservoir of equitable power to do justice in a particular case'.... At the same time, however, that Rule does not confer upon the district courts a '*standardless* residual discretionary power to set aside judgments.'" *Martinez-McBean v. Government of the Virgin Islands,* 562 F.2d 908, 911 (3d Cir.1977) (emphasis in original; citations omitted).

The order of the district court denying the motion to vacate and reenter its final judgment will be affirmed.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, concurring.

I join in Judge Seitz's opinion—because it is a balanced and accurate analysis of current law. However, I write separately to note my view that the current law on this issue seems totally inconsistent with basic concepts of justice and fairness. It is understandable that, in a variety of circumstances, a litigant might be denied his day in court because of the negligence of his lawyer. However, in those instances, the litigant may very well have a remedy in a malpractice action. Where, as here, substantive rights are irretrievably lost because of the action of either the judge or the court staff, there is no remedy for the litigant, and a person who may have a most viable and valid claim can be forever denied relief because of the negligence of a clerk of court or a judge.

Furthermore, the doctrine that lack of notice of a final judgment cannot affect the running of the time for appeal makes practically no sense in light of the way the real world actually functions. We have created a ludicrous situation where the only way a

litigant can protect himself would be to check all of the dockets of the court and make inquiries daily, and even then must rely, at his or her own peril, on information that may itself be erroneous. In a court with thousands of active cases on its docket, should we require such burdensome measures? It would be an impossible burden for the vast majority of litigants whose lawyers do not have extensive staff to monitor the clerk's office and to catch clerical errors that may be made by either the court or the clerk's staff.

By today's decision the majority intends to reinforce the obligation of attorneys to monitor the progress of their cases, and to preserve the finality of judgments. Though these are laudable goals, I have no doubt as to what the most notable effect will be: litigants who cannot afford the services of large law firms with substantial support staff will suffer. It is my hope that further injustices of this magnitude can be prevented by either an appropriate modification of Rule 4(a) or the action of Congress.