

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2004

# Saudi Basic Ind v. Exxon Corp

Precedential or Non-Precedential: Precedential

Docket No. 03-2201

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Saudi Basic Ind v. Exxon Corp" (2004). *2004 Decisions.* Paper 881.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/881

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-2201

———————

SAUDI BASIC INDUSTRIES
CORPORATION,
individually, And In The Name of,
And On Behalf Of;
AL-JUBAIL PETROCHEMICAL
COMPANY, A Partnership

Appellant

v.

EXXON CORPORATION;
EXXON MOBIL CORPORATION

———————

On Appeal from the
United States District Court
for the District of New Jersey
D.C. Civil Action No. 98-cv-04897
(Honorable William H. Walls)

———————

Argued December 9, 2003

———————

Before: AMBRO, FUENTES and
CHERTOFF, Circuit Judges

(Filed March 24, 2004)

Gregory A. Castanias, Esq. (Argued)
William K. Shirey II, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.   20001

Kenneth R. Adamo, Esq.
Michael W. Vary, Esq.
Leozino Agozzino, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH   44114

*Attorneys for Appellant*

Elizabeth J. Sher, Esq.
Pitney, Hardin, Kipp & Szuch
P.O. Box 1945
Morristown, NJ   07962

James W. Quinn, Esq. (Argued)
David J. Lender, Esq.
Weil, Gotshal & Manges
767 Fifth Avenue, 27th Floor
New York, NY 10153

Andrew S. Pollis, Esq.
David J. Michalski, Esq.
Hahn, Loeser & Parks
3300 BP America Building
200 Public Square
Cleveland, OH   44114

K.C. Johnson, Esq.
Exxon Mobil Corporation
800 Bell Street, Suite 1686J
Houston, TX   77002

*Attorneys for Appellees*

AMBRO, <u>Circuit Judge</u>

For over five years plaintiff-appellant Saudi Basic Industries Corporation ("SABIC") and defendant-appellee ExxonMobil Corporation ("ExxonMobil") have been litigating the ownership rights to supercondensed mode technology ("SCM-T"), a process for manufacturing polyethylene patented by ExxonMobil. On June 5, 2002, the United States District Court for the District of New Jersey issued an interlocutory order (the "June 2002 Order") enforcing a private stipulation agreement between SABIC and ExxonMobil under which SABIC agreed that its affiliates would not practice the SCM-T process. On appeal, SABIC has requested that we vacate the June 2002 Order. Because the District Court did not require ExxonMobil to satisfy the requisites for the injunctive relief it requested, we vacate that order and remand to the District Court.

## I.

### Facts and Procedural Posture

In 1994 and 1995, the United States Patent and Trademark Office issued two patents—No. 5,352,749 and No. 5,436,304 (called, for simplicity, the '749 patent and the '304 patent)—to Exxon Corporation (now ExxonMobil) for SCM-T. Each patent has two elements, and the first element of each patent is the same: "a level of liquid in the fluidizing medium entering the reactor which is in the range of from 17.4 to 50 weight percent based on the total weight of the fluidizing medium" (or in the party's shorthand, operating reactors "above 17.4 weight percent condensed").[1]

In 1998, SABIC filed a declaratory judgment action in the United States District Court for the District of New Jersey on behalf of its (and ExxonMobil's) partially-owned subsidiary, Kemya,[2] alleging that ExxonMobil used technology developed for Kemya to obtain the patents in breach of its service agreement with Kemya. SABIC sought a declaratory judgment that Kemya owns the patents and an injunction directing ExxonMobil to turn over legal title to Kemya.

ExxonMobil filed several counterclaims, and sought, *inter alia*, a declaratory judgment of its ownership rights in the '749 patent. The fourth of these counterclaims, filed derivatively on Kemya's behalf, accused SABIC of

---

[1] The second element of the '749 patent is the maintenance of a specific ratio of fluidized bulk density to settled bulk density ("FBD/SBD ratio"). The second element of the '304 patent is the maintenance of a certain bulk density function (called the "Z function").

[2] Formed in 1980 as a joint venture between SABIC and Exxon Chemical Arabia, Inc. (then a subsidiary of Exxon Corporation), Kemya is now a wholly-owned subsidiary of ExxonMobil.

breaching its fiduciary duty to Kemya by encouraging SABIC affiliates (including one called SHARQ) to practice the SCM-T process (the "Fourth Amended Counterclaim").

In February 2000, SABIC moved to dismiss the Fourth Amended Counterclaim. ExxonMobil agreed to the dismissal in exchange for SABIC's promise that its affiliates would not practice the SCM-T process while the litigation was pending. On March 10, 2000, the parties entered into a stipulation that "neither SABIC, SHARQ . . . nor any other SABIC affiliate (other than Kemya) will use or practice SCM-T Information[3] until the ownership rights thereto are established and the owner expressly authorizes such use . . . ." (the "March 2000 Stipulation").

The parties tendered the March 2000 Stipulation to the District Court on March 13, 2000. The District Court wrote "so ordered" on the March 10 Stipulation and later entered it as a court order on April 3, 2000 (the "April 2000 Order").

In the summer of 2000, SABIC's affiliate, SHARQ, began operating reactors above 17.4 weight percent condensed. Upon learning of this, SABIC moved the District Court to clarify the March 2000 Stipulation (the "Motion to Clarify") by confirming that it did not prohibit SHARQ's operations because

---

[3]SCM-T Information was defined in the Stipulation as the processes described in the '749 and '304 patents.

SHARQ had received permission to perform them as the third-party beneficiary of agreements between ExxonMobil and another party.

While SABIC's Motion to Clarify was pending, ExxonMobil filed a motion to dismiss SABIC's claims (the "Motion to Dismiss"), alleging that SABIC violated the April 2000 Order by allowing SHARQ to practice SCM-T. SABIC opposed the Motion to Dismiss by urging the District Court to confirm its interpretation of the March 2000 Stipulation: that a SABIC affiliate did not practice SCM-T by operating above 17.4 weight percent condensed if it was not also practicing the second element of either patent (either by maintaining a specific FBD/SBD ratio or a specific Z function).

In addition to opposing ExxonMobil's Motion to Dismiss, SABIC cross-moved under Federal Rule of Civil Procedure 60 to vacate the Court's "so ordered" notation on the March 2000 Stipulation, in order to convert the April 2000 Order into a private agreement (the "Motion to Vacate"). SABIC argued that the District Court entered the March 2000 Stipulation as a court order mistakenly and contrary to the parties' intent. The District Court agreed and granted SABIC's Motion to Vacate in April 2001. *Saudi Basic Indus. Corp. v. ExxonMobil Corp.*, No. 98-4897 (D.N.J. Apr. 26, 2001) (vacating the "so ordered" notation that was appended to the March 2000 Stipulation as entered "inadvertently and without the parties' express agreement"). But at the same hearing, the District Court also noted

3

SABIC's representation that it was not contesting the Court's right to continue to enforce the March 2000 Stipulation. JA at 437–38 (Apr. 26, 2001 hearing transcript).

A year later, on April 3, 2002, the District Court denied SABIC's Motion to Clarify after finding no legal justification (such as mutual mistake) to clarify or reform the March 2000 Stipulation. *Saudi Basic Indus. Corp. v. ExxonMobil Corp.*, 194 F. Supp. 2d 378, 389–90 (D.N.J. 2002). The District Court further stated that SABIC had been violating the March 2000 Stipulation since August 1, 2000, by allowing SHARQ to operate its reactors above 17.4 weight percent condensed. *Id.* at 390. The District Court did not address SABIC's argument, advanced in opposition to ExxonMobil's Motion to Dismiss, that to practice the SCM-T process a reactor has to employ both elements of either patent, not just operate above 17.4 weight percent condensed.

SABIC moved for reconsideration of this decision, while ExxonMobil, seizing on the District Court's statement that SABIC had violated the March 2000 Stipulation, moved for the District Court to enforce that Stipulation. On June 5, 2002, the District Court denied SABIC's motion for reconsideration and granted ExxonMobil's motion to enforce the March 2000 Stipulation. This action—the June 2002 Order— did not address SABIC's argument that only by practicing both elements of one of the patents would its affiliate be violating the March 2000 Stipulation's terms.

SABIC appealed the June 2002 Order pursuant to 28 U.S.C. § 1292(a)(1). ExxonMobil moved for partial dismissal of the appeal "for want of appellate jurisdiction, or in the alternative, for partial summary affirmance." That motion was referred to a merits panel and is consolidated with SABIC's appeal of the June 2002 Order.

## II.

### Jurisdiction

As threshold matters, ExxonMobil challenges our appellate jurisdiction and the timeliness of SABIC's appeal. We conclude that our appellate jurisdiction is proper under 28 U.S.C. § 1292(a)(1) because the June 2002 Order is effectively an injunction. And we conclude that SABIC's appeal was timely because it was filed within the 30-day appellate window that began with the issuance of the June 2002 Order.

### A. We have appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

As the June 2002 Order is an interlocutory decision of the District Court, its appealability is governed by 28 U.S.C. § 1292. Section 1292(a)(1) provides appellate jurisdiction over interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." Thus, our appellate jurisdiction is proper under § 1292(a)(1) if the June 2002 Order is an injunction.

An order need not have the "literal characterization" of an injunction for

§ 1292(a)(1) to apply, as long as it has the same practical effect. *Hershey Foods Corp. v. Hershey Creamery Co.*, 945 F.2d 1272, 1276 (3d Cir. 1991). We have previously defined an injunctive order as one that is "[1] directed to a party, [2] enforceable by contempt, and [3] designed to accord or protect 'some or all of the substantive relief sought by a complaint' in more than a temporary fashion." *Cohen v. Bd. of Trs. of the Univ. of Med. & Dentistry of N.J.*, 867 F.2d 1455, 1465 n.9 (3d Cir. 1989) (en banc) (quoting Wright & Miller, et al., *Federal Practice and Procedure* § 3922 (1977)); *see also Hershey Foods*, 945 F.2d at 1277 ("[I]n order to be an injunction for purposes of § 1292(a)(1), the order must grant part of the relief requested by the claimant and must be immediately enforceable by contempt."). In contrast, "[o]rders that in no way touch on the merits of the claim but only relate to pretrial procedures" are not interlocutory injunctions within the meaning of § 1292(a)(1). *Hershey Foods*, 945 F.2d at 1277 (citing *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.*, 385 U.S. 23 (1966)).

We conclude that the June 2002 Order satisfies the three *Cohen* factors for an effective injunction appealable under 28 U.S.C. § 1292(a)(1). First, because the June 2002 Order requires that "SABIC shall fully comply with the terms of the March [2000] Stipulation, which are incorporated herein by reference," it is expressly directed to a party. Second, by granting ExxonMobil's motion to enforce the March 2000 Stipulation, the June 2002 Order imposes an equitable remedy against SABIC, whose noncompliance is punishable by contempt. *See Cohen*, 867 F.2d at 1465; *see also Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 146 (3d Cir. 1994) ("Failure to obey a court judgment is an indirect contempt . . . ." (citing *Black's Law Dictionary* 319 (6th ed. 1990))). Third, the June 2002 Order was "designed to accord or protect some or all of the substantive relief sought by a complaint." In its amended counterclaims, ExxonMobil sought substantive relief that included a declaration of ownership of the '749 patent, one of the patents for the SCM-T process. The June 2002 Order enforced the parties' stipulated agreement that neither SABIC nor its affiliates would practice the SCM-T process, as defined by the '749 and '304 patents, until ownership rights to them are established. In this context, the June 2002 Order was "designed to accord or protect some or all of the substantive relief sought" by ExxonMobil in its amended counterclaims, namely, the right, as its purported owner, to exclude SABIC and its affiliates from ownership or practice of the '749 patent.[4] Thus the June 2002 Order is, in effect, an injunction appealable under 28 U.S.C. § 1292(a)(1).

---

[4]We reject as groundless ExxonMobil's argument that only the relief sought in the Fourth Amended Counterclaim (which was dismissed), as opposed to the amended counterclaims as a whole, could have been the substantive relief protected by the June 2002 Order.

5

Finally, we reject ExxonMobil's argument that SABIC must demonstrate "serious, perhaps irreparable consequences" from the June 2002 Order in order to sustain an appeal. ExxonMobil points to *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), in which the Supreme Court stated that "[u]nless a litigant can show that an interlocutory order of the district court might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal." *Id*. at 84 (citing *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955)). But we have since recognized that *Carson* required the showing of a "serious, perhaps irreparable consequence" in the context of determining the appealability of an order *denying* injunctive relief. *Cohen*, 867 F.2d at 1467. We have consistently refused to require such a showing of an enjoined party appealing an order *granting* an injunction. *See Casey v. Planned Parenthood of S.E. Pa.*, 14 F.3d 848, 855 (3d Cir. 1994) ("Unlike a denial, a grant of injunctive relief subjects the losing party to contempt, and provides some or all of the relief sought by the claimant, two of the key features we identified in *Cohen* as justifying an interlocutory appeal."); *Ross v. Zavarella*, 916 F.2d 898, 902 (3d Cir. 1990); *Cohen*, 867 F.2d at 1467. Thus, because the June 2002 Order granted injunctive relief, SABIC need not show "serious, perhaps irreparable consequence" to sustain its appeal.

**B.     SABIC's appeal was timely.**

Under Federal Rule of Appellate Procedure 4(a)(1)(a), a party has 30 days after an order is entered in which to file an appeal. SABIC filed its Notice of Appeal on June 21, 2002, within the same month that the District Court entered the June 2002 Order. But ExxonMobil construes the June 2002 Order as a reinstatement of the previously-vacated order enforcing the March 2000 Stipulation,[5] and argues that the reinstatement of a previously vacated order cannot revive an expired appeal period. Thus, ExxonMobil suggests, SABIC's 30-day period in which to appeal the enforcement of the March 2000 Stipulation began to run on April 3, 2000, the day the District Court entered the March 2000 Stipulation as an order. We do not agree.

ExxonMobil relies on two cases—*West v. Keve*, 721 F.2d 91 (3d Cir. 1983), and *Hall v. Commonwealth Mental Health Center*, 772 F.2d 42 (3d Cir. 1985)—in support of its argument that the reinstatement of a previously vacated order cannot revive an expired appellate period. Both cases miss the mark here. In *West* and *Hall* we rejected as untimely appeals from reinstated, previously vacated orders. But in both of those cases, unlike here, a

---

[5]Recall that the District Court entered the Stipulation as an order on April 3, 2000, but vacated the "so ordered" notation a year later. *Saudi Basic Indus. Corp. v. ExxonMobil Corp.*, No. 98-4897 (D.N.J. Apr. 26, 2001) (order).

6

party sought reinstatement of an earlier judgment for the express purpose of reviving an appellate window. In *West*, our holding rejecting the timeliness of such an appeal was expressly limited to that circumstance:

> We hold, therefore, that because the avowed purpose of the Rule 60(b) motion in this case was to extend the time for appeal, it had to meet the time limitations of Rule 4(a). We expressly do not decide whether a Rule 60(b) motion must meet the time constraints of Rule 4(a) under other circumstances not present here.

721 F.2d at 97. Similarly, in *Hall*, we affirmed the district court's denial of an order to vacate and reenter an earlier judgment which a party sought "in order to permit timely appeal on the merits." 772 F.2d at 42.

In our case the record clearly indicates that the purpose for vacating the "so ordered" notation was not to revive SABIC's appeal rights but rather to allow SABIC to avoid contempt. Nor could the sequence of vacate-then-reinstate possibly have been engineered by SABIC to revive its appellate window, as it was ExxonMobil, not SABIC, who moved to enforce the previously vacated stipulation order—and did so more than a year after the order to vacate was entered. In *West* and *Hall*, the same party who moved to vacate the order also moved to reinstate it,

and did so simultaneously. This case presents circumstances not present in *West* and *Hall*, and therefore is not controlled by their holdings.

In summary, we reject ExxonMobil's argument that SABIC's appeal period began on April 3, 2000, the day the District Court entered the March 2000 Stipulation as a court order. SABIC may appeal from the June 2002 Order enforcing a previously vacated stipulation order. That appeal, filed within 30 days of the June 2002 Order, is timely.

## III.

### Application of the Injunction Standard

The District Court's June 2002 Order required SABIC to "fully comply with the terms of the March [2000] Stipulation." On appeal, SABIC argues that the District Court erred in rendering this order without requiring ExxonMobil to satisfy the required elements for granting an injunction.[6]

In the context of the appellate jurisdiction question discussed above, we

---

[6]To satisfy the injunction standard, the moving party must demonstrate the classic four elements: (1) a reasonable probability of success on the merits; (2) that denial of injunctive relief will result in irreparable injury; (3) that granting injunctive relief will not result in even greater harm to the nonmoving party; and (4) that granting injunctive relief will be in the public interest. *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999).

7

determined that the June 2002 Order was, in effect, an injunction. The fact that it enforced a contractual settlement did not render it any less of an injunction, as we have recognized that "[a] district court may enter injunctive relief on a party's behalf to enforce a settlement agreement when it determines that one of the parties has failed to perform its obligations." *Wilcher v. City of Wilmington*, 139 F.3d 366, 372 (3d Cir. 1998).

We review a district court's grant of a preliminary injunction for "whether the court abused its discretion, committed an obvious error in applying the law, or made a clear mistake in considering the proof." *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 250 (3d Cir. 2003) (*citing In re Assets of Martin*, 1 F.3d 1351, 1357 (3d Cir.1993)), *cert. granted*, 124 S. Ct. 399 (2003). Because the June 2002 Order was effectively an injunction, it was a "clear mistake" for the District Court not to have required ExxonMobil, the moving party, to prove the requisites for granting an injunction. We thus remand to the District Court for this consideration. *See Rolo v. Gen. Dev. Corp.*, 949 F.2d 695, 704 (3d Cir. 1991).

We also agree with SABIC that the District Court should hold a hearing prior to enforcing the March 2000 Stipulation. In requiring SABIC to comply with the March 2000 Stipulation, the June 2002 Order incorporated its terms. But the parties dispute whether, under the terms of the March 2000 Stipulation, "practicing SCM-T Information," as defined by the '749 and '304 patents, means practicing

the second elements of either patent in addition to operating above 17.4 weight percent condensed. "Where material facts concerning the *existence or terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *See Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991) (citing *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (emphasis in original)); *see also Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 541 (4th Cir. 2002) ("If there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into an agreement, or over the agreement's terms, the district court may not enforce a settlement agreement summarily." (emphasis omitted)). Thus the District Court should have a hearing to resolve the disputed terms of the March 2000 Stipulation prior to enforcing it.

## IV.

### Conclusion

We have jurisdiction over SABIC's appeal, which was timely. Because the District Court did not properly apply the injunction standard in granting ExxonMobil's motion to enforce the March 2000 Stipulation, we hereby vacate its June 2002 Order and remand to the District Court for a hearing to resolve the March 2000 Stipulation's disputed terms before determining whether injunctive relief should issue under the standards long extant for so determining.